**T.A. WYNER and George T. Simon, Plaintiffs,**

v.

**David B. STRUHS, in his official capacity as Secretary, Florida Department of Environmental Protection, and Terrence Coullitte, individually and in his official capacity as Park Manager of the John D. MacArthur Beach State Park, Defendants.**

**No. 03–80103–CIV.**

United States District Court, S.D. Florida.

Feb. 27, 2003.

Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Miami, FL, James Kellogg Green, James K. Green, West Palm Beach, FL, for T.A. Wyner, George Simon, plaintiffs.

James Orrin Williams, Jr., Barbara Jeanne Taggart, Williams Leininger & Cosby, West Palm Beach, FL, for David B. Struhs, in his official capacity as Secretary, Florida Department of Environmental Protection, Terence Coullitte, individually and in his official capacity as Park Manager of the John D. MacArthur Beach State Park, defendants.

### CORRECTED ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction, filed February 12, 2003. The Court has reviewed the record, heard argument and received evidentiary submissions at a hearing, and is otherwise fully advised in the premises.

Plaintiff Wyner comes before this Court seeking an order prohibiting state park officials at John D. MacArthur Beach State Park ("Park") from arresting her or otherwise interfering with her planned "temporary art installation comprised of nude bodies in the form of a peace sign" scheduled for February 14, 2003.[1] Plain-

---

1. This activity may be described both as art and as political advocacy. As the February 12, 2003 edition of the *Palm Beach Post* de-

tiff Simon is a videographer who plans to attend the event and seeks to view it in its planned format. (Simon Aff. ¶¶ 3, 7). Defendants have indicated that they will not permit the event to take place, or at least, that they consider the event as described to be a violation of park rules. This is not the first time Wyner has sought to engage or has engaged in nude activities at the Park. In fact, Wyner has a long history of engaging in such activity that dates back at least thirteen years. These events have been met at times with the threat of arrest and later, with cooperation or at least tolerance. Based on the Park's response to Wyner's recent notice of her plans, any period of cooperation or tolerance has come to an end. Some historical background of this relationship is helpful to understanding the context of this motion.

The Park is a recreation area including nature trails and a beach among other attractions. Part of it sits on land that, prior to state control, was considered a "clothing optional" beach. *See McGuire v. State*, 489 So.2d 729, 730 (Fla.1986). In 1990, Wyner and others went to the Park to engage in a protest of recently adopted clothing and speech restrictions. Wyner, not in violation of the rules on attire, was clothed only in an opaque copy of the Bill of Rights, and spoke in favor of the rights protected by the First Amendment. She was arrested and charged with disorderly conduct, but those charges were later dropped for lack of probable cause. Wyn-er instituted a civil rights violation suit and was awarded damages, but that result was later overturned on appeal on the basis that park officials were entitled to qualified immunity. *See DeWald v. Wyner*, 674 So.2d 836 (Fla. 4 Dist. Ct.App.1996). In 1991, Wyner directed and performed in a play at the Park entitled *MacArthur: The Man and the Beach* which included nude scenes. Wyner and others were arrested, but again, those charges were dismissed. In 1995, she and Plaintiff Simon instituted civil rights actions for damages in connection with those arrests and the termination of the play. The Simon case reached a settlement which, in pertinent part, included the following terms

2. While defendants do not condone or encourage nudity at John D. MacArthur Beach State Park, they recognize that nudity coupled with expressive activity is generally protected by the First Amendment subject to reasonable restrictions on time, place and manner.

3. In an effort to coordinate expressive activities and to develop a cooperative relationship with defendants, plaintiff and his representatives, specifically including T.A. Wyner, hereby notify defendants that they intend to perform the play "MacArthur/The Man and the Beach" at John D. MacArthur Beach State Park.

4. The play shall be performed at least 100 yards north of the northernmost

scribed the event in an article entitled *Nude Protest Against War*

Washington is on a war footing, and after years in dresser drawers and scrapbooks and boxes filled with mementos, peace signs are reappearing. Antiwar rallies will be held in many cities this weekend and many Palm Beach Countians are heading to Washington. Those wishing to make a point here can visit MacArthur Beach State Park on Friday morning. Organizers expect to create a "Living Nude Peace Sign"

around 11 a.m. T.A. Wyner, longtime advocate of clothing-optional beaches, is coordinating the event, which is being held in conjunction with the annual Midwinter Naturist Festival at Sunsport Gardens in Loxahatchee. 'We don't know how many people we'll get,' festival organize Morley Schloss said. 'If we get a lot we'll have a big sign. If we don't we'll have a smaller one. But we'll still make our point. We expect people to join us who are not part of the festival as well.'

boardwalk on the beach in an area from the dune line to the ocean.

5. Plaintiff and his representatives shall arrange for placement of a bolt of cloth in a semi-circle around the area where he play will be performed.

7. At least fourteen (14) days before the play, T.A. Wyner or her designee shall contact the park manager to provide a best estimate as to the number of participants and size of the audience in order to assist defendants in planning for the performance.

(Pls.' Compl. Ex. 1). At least twice, Wyner has directed and performed in the play, both with and without nudity and both with and without the cloth screen described in the settlement, without arrest or incident.

On January 29, 2003, apparently in the continued spirit of cooperation, Wyner sent an email to Defendant, Park Manager Terrence Coulliette, notifying him of her intentions with regard to the event planned on February 14, 2003. (Pls.' Compl. Ex. 2). The entire event is scheduled to last approximately three hours with the actual exhibition lasting less than half that time. *Id.* Wyner estimated approximately fifty participants in the event. *Id.* The initial email response from Defendant Coulliette appeared promising, including the statements that "I am sure everything will work out fine, as we communicate effectively, and seek cooperation and understanding . . . ." and "I do not anticipate any problems at this time." (Pls.' Compl. Ex. 3). However, problems appear to have arisen. The next communication from Defendants stated in part as follows:

At this time, the Division does not believe that the nudity planned for your activities is expressive conduct protected by the First Amendment. However, even if this was not the case, the Division believes that it has a significant interest in keeping the entire park open to all visitors during operating hours and that the decision not to allow nudity as part of your demonstration is a reasonable manner restriction. You are of course free to conduct your activities, absent the nudity.

(Pls.' Compl. Ex. 4). The questions presented before this Court then are, judging on the standards applied to a preliminary injunction motion, whether the planned activity is indeed expressive conduct, and if so, whether the restrictions, as applied to this activity, are permissible, and thus whether Defendants' prevention of the event would be a First Amendment violation.

The legal standard for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) is as follows. The moving party must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that, if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *McDonald's Corp.*, 147 F.3d at 1306 (internal citations and quotations omitted).

The primary consideration for this Court in addressing the present motion is whether, if Defendants do prevent the planned event, a violation of Plaintiffs' First Amendment rights will occur. Addressing the four burdens for a preliminary injunction motion in reverse order in

order to resolve efficiently several steps in the process, it is first recognized that, if suppression of this activity would be unconstitutional, allowing that to happen would be adverse to the public interest. Alternatively, permitting the event to go forward will benefit the public interest. *See, e.g., Stromberg v. California,* 283 U.S. 359, 369, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) ("The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system."). The threatened injury to the movant in this case also outweighs whatever damage the proposed injunction may cause the opposing party. Again assuming a constitutional violation, that injury far exceeds the logistical or practical difficulties that may be faced by defendants, especially given that no group tours and no special events are planned in the Park during the time for the event. (Compl.Ex. 2). The question of irreparable harm is also answered in the affirmative in this context. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citing *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). Thus, this Court is left with only the first question in the preliminary injunction test: whether Plaintiffs have shown a substantial likelihood of success on the merits.

■ The Court is presented first with a question as to the nature of the conduct. With regard to the initial question whether the proposed activity is in fact expressive conduct that is protected under the First Amendment, the answer is yes. Nude overtly political speech in the form of a "living nude peace symbol" is expressive conduct well within the ambit of the First Amendment. Artistic endeavors involving nudity as part of their expression such as the musical *Hair* have been accorded First Amendment protection. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 550, 557–558, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). Wyner, in her testimony, explained her planned event and the importance of nudity to its concept as a means of demonstrating the nonthreatening nature of the event and the vulnerability of peace and the participants. Wyner related this explanation to her history of anti-war activity dating back to the Kent State shootings in 1970 and the understandable desire to communicate this message, as well as the absence of weapons at the event, both to the audience and to authorities.

■ It has previously been held that the Park is a public forum. *Naturist Society, Inc. v. Fillyaw,* 958 F.2d 1515, 1521–23 (11th Cir.1992). That said, some reasonable restrictions may be placed on the exercise of First Amendment rights. *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Those restrictions may relate to the time, place and manner of the conduct. *Id.* The validity of those restrictions is judged by the following test: whether the restriction (1) is justified without reference to the content of the regulated speech; (2) serves a significant government interest; (3) is narrowly tailored to serve that interest; (4) leaves open ample alternative channels for communication of the information. *Id.* at 293, 104 S.Ct. 3065. The regulations in question here are the Department of Environmental Protection rules prohibiting nudity on the beach and governing free speech activities. FLA. ADMIN. CODE ANN. r. 62D–2.014(7)(b) and FLA. ADMIN. CODE ANN. r. 62D–2.014(18).

First, are these rules content neutral? Plaintiffs have raised a cloud over Rule 2.014(18) and the apparently unchecked discretion provided to the Park Manager in consultation with Department lawyers. Rule 2.014(7)(b) prohibits nudity as defined in this section with regard to bathing and swimming. Plaintiffs made the important point that nudity in free speech activities has been permitted in the past under Rule 2.014(18) and thus, that a plausible interpretation of the nudity prohibition relates only to bathing and swimming activities as that section is titled under Rule 2.014(7). The question of whether these rules have been consistently applied in a content neutral fashion involves a more fact-specific analysis of the pattern of implementation, and at least some of the testimony received at the hearing indicates that content neutrality may not be present. The Department indicated that the restrictions on speech activities are different when applied to plays and other artistic activities as compared to acts of political expression such as a peace demonstration or antiwar protest. Since an answer to that question is not essential to this analysis, however, it is not further addressed herein. Content neutrality is hereafter assumed only for the purposes of this order.

■ The *O'Brien* test has been applied to determine the validity of content neutral restrictions. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289–90, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). The *O'Brien* test requires that the regulation (1) be within the government's constitutional power to enact; (2) further a substantial or important government interest; (3) is unrelated to the suppression of free expression; (4) is no greater than is essential to further the government interest.[2] *Id.*

Does the regulation serve a significant government interest? The answer depends on the interest being served, and here the answer is again in the affirmative. The prevention of nudity in a state park may serve multiple interests. Preventing preemption of clothed bathers from using the park, protection of the public from the 'offense' of nudity, and park preservation and aesthetics may all serve as substantial or important government interests. Here, the Defendants have given clear indication of the interest they believe the rule serves. The letter sent to Plaintiff by Defendant Coulliette is clear that the state "has a significant interest in keeping the entire park open to all visitors during operating hours ...." That letter went on to state, "[y]ou are of course free to conduct your activities, absent the nudity," indicating that the sole obstacle to achieving the state's interest is neither the space occupied by the event nor any other aspect of the event except the nudity of the participants. (Compl.Ex. 4). That interest in protecting the public from the potential offense of nudity meets this standard.[3]

---

**2.** The factors of the *O'Brien* test are organized differently, however the crucial analysis and the result in this case would be essentially the same regardless of which test were applied. This Court applies the time, place or manner analysis with regard to a public forum.

**3.** Additional indication of the predominance of this state interest exists in the form of the settlement referred to above. In the settlement, the state agreed to permit nudity on the beach, however it insisted upon distance restrictions from busier areas and a cloth barrier to prevent unwilling exposure to the nudity. Thus, in this case, it is not nudity itself that the state seeks to prevent on the basis of moral objection (as Justice Scalia has theorized for other anti-nudity rules *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 575, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)). Rather it is the offensive effect that nudity might have on others that the state hopes to eliminate. *See id.* at 590–91, 111 S.Ct. 2456 (White, J., dissenting).

Is this rule sufficiently narrowly tailored to serve that interest? The question of narrow tailoring is one of whether the restriction "burden[s] substantially more speech than is necessary to further" the state interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). In many cases, this question is a theoretical one that must be answered by measuring the governmental rule against hypothetical less restrictive alternatives that have been neither tried nor tested and have not been demonstrated to effectively serve the government's interest. Here, that is not the case, and that factual distinction indeed makes all the difference in the outcome of this case as compared to other cases involving nudity and expression. There have already been instances of nude expression allowed in the Park. The settlement lays out a number of agreed-upon manner restrictions that are far less restrictive than the total ban on nudity in the Park.[4]

Acknowledging the above facts and the demonstrated less restrictive alternatives, it is impossible to maintain the total ban on nudity as a reasonable restriction on the manner in which the "living nude peace symbol" may be presented. The present restriction prevents this form of expression in full. While a living peace symbol might still be performed, a nude one is totally and unnecessarily prohibited.

The choice need not be either/or. Plaintiffs' desired expression and the interests of the state may both be satisfied simultaneously. Reaching that determination, the Court finds that Plaintiffs have clearly satisfied the burden of persuasion of showing a likelihood of success on the merits of this case.[5]

In many respects, this case may seem trivial, but it also raises serious issues of freedom and expression. The value of freedom is found not only in the larger issues of life but also in the fanciful and strange. Events like Fantasy Fest in Key West and the Mango Strut in Miami may not be to everyone's taste, but they add to the spice of life in South Florida that for the most part, we enjoy. For several years at MacArthur Park, the Plaintiff, at times wearing nothing but the Bill of Rights, has been disrobing as part of her expression. Her actions have been tolerated by the state. Protesting a potential war through naked protest seems a bit quixotic, but it is also part of the freedom that both those supporting the war and those who oppose it seek to protect. Defendants shall neither prevent nor interfere with Plaintiffs' planned event on February 14, 2003. The Court wishes to make clear, though, that this injunction does not preclude the posting of notices or signs advising Park visitors of the occurrence of

---

4. Plaintiff has indicated displeasure with those restrictions, however it is not the job of this Court to mandate any less restrictive alternatives. It is sufficient that less restrictive alternatives exist that can be and have been put in place which allow significantly more expressive conduct for this Court to decide that the current rule if applied to the present factual circumstances would be unconstitutional. Now is not the time to consider the full range of possibilities. If, in the future, the Park adopts a less restrictive alternative and Plaintiffs or others are not satisfied with that rule, that rule may be challenged at that time.

5. Plaintiffs also identify alternative bases for success on the merits. Plaintiffs challenge the rule and its application as not neutral with respect to content. They also suggest a facial attack on the validity of the manner restriction determination made by the Park Manager pursuant to FLA. ADMIN. CODE ANN. r. 62D–2.014(18) and possibly that the ability of the Manager to make case by case restrictions without substantial limits to his discretion may indicate an invalid prior restraint. This Court does not address those further but neither does it determine that those bases are not valid.

this event nor the use of other measures used in the past with respect to the play.

Accordingly, and for the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Plaintiffs' Motion for Preliminary Injunction is GRANTED. The parties have agreed that security is not necessary in this instance and therefore, none will be required.