(Slip Opinion)     OCTOBER TERM, 2006     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SOLE, SECRETARY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, ET AL. *v.* WYNER ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 06–531.   Argued April 17, 2007—Decided June 4, 2007

In private actions under 42 U. S. C. §1983, federal district courts may "allow the prevailing party . . . a reasonable attorney's fee as part of the costs." §1988(b). Plaintiff-respondent Wyner notified the Florida Department of Environmental Protection (DEP), in mid-January 2003, of her intention to create on Valentine's Day, within MacArthur State Beach Park, an antiwar artwork consisting of nude individuals assembled into a peace sign. Responding on February 6, DEP informed Wyner that her display would be lawful only if the participants complied with Florida's "Bathing Suit Rule," which requires patrons of state parks to wear, at a minimum, a thong and, if female, a bikini top. To safeguard her display, and future nude expressive activities, against police interference, Wyner and a coplaintiff (collectively Wyner or plaintiff) sued Florida officials in the Federal District Court on February 12. Invoking the First Amendment's protection of expressive conduct, Wyner requested immediate injunctive relief against interference with the peace sign display and permanent injunctive relief against interference with future activities similarly involving nudity. An attachment to the complaint set out a 1995 settlement with DEP permitting Wyner to stage a play with nude performers at MacArthur Beach provided the area was screened off to shield beachgoers who did not wish to see the play. Although disconcerted by the hurried character of the proceeding, the District Court granted Wyner a preliminary injunction on February 13, suggesting that a curtain or screen could satisfy the interests of both the State and Wyner. The peace symbol display that took place the next day was set up outside a barrier apparently put up by the State. Once disassembled from the peace symbol formation, participants went

into the water in the nude. Thereafter, Wyner pursued her demand for a permanent injunction, noting that she intended to put on another Valentine's Day production at MacArthur Beach, again involving nudity. After discovery, both sides moved for summary judgment. At a January 21, 2004 hearing, Wyner's counsel acknowledged that the peace symbol display participants had set up in front of the barrier. The court denied plaintiff's motion for summary judgment and granted defendants' motion for summary final judgment. The deliberate failure of Wyner and her coparticipants to stay behind the screen at the 2003 Valentine's Day display, the court concluded, demonstrated that the Bathing Suit Rule's prohibition of nudity was essential to protect the visiting public. While Wyner ultimately failed to prevail on the merits, the court added, she did obtain a preliminary injunction, and therefore qualified as a prevailing party to that extent. Reasoning that the preliminary injunction could not be revisited at the second stage of the litigation because it had expired, the court awarded plaintiff counsel fees covering the first phase of the litigation. The Florida officials appealed, challenging both the preliminary injunction and the counsel fees award. The Eleventh Circuit held first that defendants' challenges to the preliminary injunction were moot. The court then affirmed the counsel fees award, reasoning that the preliminary order allowed Wyner to present the peace symbol display unimpeded by adverse state action.

*Held:* Prevailing party status does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case. Pp. 6–11.

(a) "The touchstone of the prevailing party inquiry" this Court has stated, is "the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Assn.* v. *Garland Independent School Dist.*, 489 U. S. 782, 792–793. At the preliminary injunction stage, the court is called upon to assess the probability of the plaintiff's ultimate success on the merits. The foundation for that assessment will be more or less secure depending on the thoroughness of the exploration undertaken by the parties and the court. In this case, the preliminary injunction hearing was necessarily hasty and abbreviated. There was no time for discovery, nor for adequate review of documents or preparation and presentation of witnesses. The provisional relief granted expired before appellate review could be gained, and the court's threshold ruling would have no preclusive effect in the continuing litigation, as both the District Court and the Court of Appeals considered the preliminary injunction moot once the display took place. The provisional relief's tentative character, in view of the continuation of the litigation to definitively resolve the controversy,

Syllabus

would have made a fee request at the initial stage premature. Of controlling importance, the eventual ruling on the merits for defendants, after both sides considered the case fit for final adjudication, superseded the preliminary ruling. Wyner's temporary success rested on a premise—the understanding that a curtain or screen would adequately serve Florida's interest in shielding the public from nudity—that the District Court, with the benefit of a fuller record, ultimately rejected. Wyner contends that the preliminary injunction was not undermined by the subsequent merits adjudication because the decision to grant preliminary relief was an "as applied" ruling based on the officials' impermissible content-based administration of the Bathing Suit Rule. But the District Court assumed content neutrality for purposes of its preliminary order. The final decision in Wyner's case rejected the same claim she advanced in her preliminary injunction motion: that the state law banning nudity in parks was unconstitutional as applied to expressive, nonerotic nudity. At the end of the fray, Florida's Bathing Suit Rule remained intact. Wyner had gained no enduring "chang[e] [in] the legal relationship" between herself and the state officials she sued. See *Texas State Teachers Assn.*, 489 U. S., at 792. Pp. 6–10.

(b) Wyner is not a prevailing party, for her initial victory was ephemeral. This Court expresses no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees. It decides only that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under §1988(b) if the merits of the case are ultimately decided against her. Pp. 10–11.

179 Fed. Appx. 566, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–531

MICHAEL W. SOLE, SECRETARY, FLORIDA DEPART-
MENT OF ENVIRONMENTAL PROTECTION,
ET AL., PETITIONERS *v.* T. A. WYNER ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 4, 2007]

JUSTICE GINSBURG delivered the opinion of the Court.

For private actions brought under 42 U. S. C. §1983 and
other specified measures designed to secure civil rights,
Congress established an exception to the "American Rule"
that "the prevailing litigant is ordinarily not entitled to
collect [counsel fees] from the loser." *Alyeska Pipeline
Service Co.* v. *Wilderness Society*, 421 U. S. 240, 247
(1975). That exception, codified in 42 U. S. C. §1988(b),
authorizes federal district courts, in their discretion, to
"allow the prevailing party . . . a reasonable attorney's fee
as part of the costs." This case presents a sole question:
Does a plaintiff who gains a preliminary injunction after
an abbreviated hearing, but is denied a permanent injunc-
tion after a dispositive adjudication on the merits, qualify
as a "prevailing party" within the compass of §1988(b)?

Viewing the two stages of the litigation as discrete
episodes, plaintiffs below, respondents here, maintain that
they prevailed at the preliminary injunction stage, and
therefore qualify for a fee award for their counsels' efforts
to obtain that interim relief. Defendants below, petition-

ers here, regard the case as a unit; they urge that a pre-
liminary injunction holds no sway once fuller considera-
tion yields rejection of the provisional order's legal or
factual underpinnings. We agree with the latter position
and hold that a final decision on the merits denying per-
manent injunctive relief ordinarily determines who pre-
vails in the action for purposes of §1988(b). A plaintiff
who achieves a transient victory at the threshold of an
action can gain no award under that fee-shifting provision
if, at the end of the litigation, her initial success is undone
and she leaves the courthouse emptyhanded.

I

In mid-January 2003, plaintiff-respondent T. A. Wyner
notified the Florida Department of Environmental Protec-
tion (DEP) of her intention to create on Valentine's Day,
February 14, 2003, within John D. MacArthur Beach
State Park, an antiwar artwork. The work would consist
of nude individuals assembled into a peace sign. By letter
dated February 6, DEP informed Wyner that her peace
sign display would be lawful only if the participants com-
plied with the "Bathing Suit Rule" set out in Florida Ad-
ministrative Code §62D–2.014(7)(b) (2005). That rule
required patrons, in all areas of Florida's state parks, to
wear, at a minimum, a thong and, if female, a bikini top.[1]

To safeguard the Valentine's Day display, and future
expressive activities of the same order, against police
interference, Wyner filed suit in the United States District
Court for the Southern District of Florida on February 12,
2003. She invoked the First Amendment's protection of
expressive conduct, and named as defendants the Secre-

---

[1] The rule reads: "In every area of a park including bathing areas no
individual shall expose the human, male or female genitals, pubic area,
the entire buttocks or female breast below the top of the nipple, with
less than a fully opaque covering." Fla. Admin. Code Ann. §62D–
2.014(7)(b) (2005).

tary of DEP and the Manager of MacArthur Beach Park.[2] Her complaint requested immediate injunctive relief against interference with the peace sign display, App. 18, and permanent injunctive relief against interference with "future expressive activities that may include non-erotic displays of nude human bodies," *id.*, at 19. An exhibit attached to the complaint set out a May 12, 1995 Stipulation for Settlement with DEP. *Id.*, at 22–23. That settlement had facilitated a February 19, 1996 play Wyner coordinated at MacArthur Beach, a production involving nude performers. A term of the settlement provided that Wyner would "arrange for placement of a bolt of cloth in a semi-circle around the area where the play [would] be performed," *id.*, at 23, so that beachgoers who did not wish to see the play would be shielded from the nude performers.

The day after the complaint was filed, on February 13, 2003, the District Court heard Wyner's emergency motion for a preliminary injunction. Although disconcerted by the hurried character of the proceeding, see *id.*, at 37, 93, 95, the court granted the preliminary injunction. "The choice," the court explained, "need not be either/or." *Wyner* v. *Struhs*, 254 F. Supp. 2d 1297, 1303 (SD Fla. 2003). Pointing to the May 1995 settlement laying out "agreed-upon manner restrictions," the court determined that "[p]laintiff['s] desired expression and the interests of the state may both be satisfied simultaneously." *Ibid.* In this regard, the court had inquired of DEP's counsel at the preliminary injunction hearing: "Why wouldn't the curtain or screen solve the problem of somebody [who] doesn't want to see . . . nudity? Seems like that would solve [the]

---

[2] Wyner was joined by coplaintiff George Simon, who served as a videographer for expressive activities Wyner previously organized at MacArthur Beach. See App. 13. For convenience, we refer to the coplaintiffs collectively as Wyner or plaintiff.

problem, wouldn't it?" App. 86. Counsel for DEP responded: "That's an option. I don't think necessarily [defendants] would be opposed to that . . . ." *Ibid.;* see *id.*, at 74 (testimony of Chief of Operations for Florida Park Service at the preliminary injunction hearing that the Service's counsel, on prior occasions, had advised: "[I]f they go behind the screen and they liv[e] up to the agreement then it's okay. If they don't go behind the screen and they don't live up to the agreement then it's not okay.").

The peace symbol display took place at MacArthur Beach the next day. A screen was put up, apparently by the State, as the District Court anticipated. See *id.*, at 108. See also *id.*, at 94 (District Judge's statement at the conclusion of the preliminary injunction hearing: "I want to make it clear . . . that the [preliminary] injunction doesn't preclude the department, if it chooses, from using . . . some sort of barrier . . . ."). But the display was set up outside the barrier, and participants, once disassembled from the peace symbol formation, went into the water in the nude. See *id.*, at 108; Deposition of T. A. Wyner in Civ. Action No. 03–80103 (SD Fla., Nov. 14, 2003), pp. 99–100.

Thereafter, Wyner pursued her demand for a permanent injunction. Her counsel represented that on February 14, 2004, Wyner intended to put on another production at MacArthur Beach, again involving nudity. See App. 107. After discovery, both sides moved for summary judgment. At the hearing on the motions, held January 21, 2004, the District Court asked Wyner's counsel about the screen put up around the preceding year's peace symbol display. Counsel acknowledged that the participants in that display ignored the barrier and set up in front of the screen. *Id.*, at 108.

A week later, having unsuccessfully urged the parties to resolve the case as "[they] did before in [the 1995] settlement," *id.*, at 143, the court denied plaintiff's motion for

summary judgment and granted defendants' motion for summary final judgment. The deliberate failure of Wyner and her coparticipants to remain behind the screen at the 2003 Valentine's Day display, the court concluded, demonstrated that the Bathing Suit Rule's prohibition of nudity was "no greater than is essential . . . to protect the experiences of the visiting public." *Wyner* v. *Struhs*, Case No. 03–80103–CIV (SD Fla., Jan. 28, 2004) (Summary Judgment Order), App. to Pet. for Cert. 42a. While Wyner ultimately failed to prevail on the merits, the court added, she did obtain a preliminary injunction prohibiting police interference with the Valentine's Day 2003 temporary art installation, *id.*, at 45a, and therefore qualified as a prevailing party to that extent, see *Wyner* v. *Struhs*, Case No. 03–80103–CIV (SD Fla., Aug. 16, 2004) (Omnibus Order), App. to Brief in Opposition 5a–13a. The preliminary injunction could not be revisited at the second stage of the litigation, the court noted, for it had "expired on its own terms." *Id.*, at 4a. So reasoning, the court awarded plaintiff counsel fees covering the first phase of the litigation.

The Florida officials appealed, challenging both the order granting a preliminary injunction and the award of counsel fees. Wyner, however, pursued no appeal from the final order denying a permanent injunction. The Court of Appeals for the Eleventh Circuit held first that defendants' challenges to the preliminary injunction were moot because they addressed "a finite event that occurred and ended on a specific, past date." *Wyner* v. *Struhs*, 179 Fed. Appx. 566, 567, n. 1 (2006) *(per curiam)*. The court then affirmed the counsel fees award, reasoning that plaintiff had gained through the preliminary injunction "the primary relief [she] sought," *i.e.*, the preliminary order allowed her to present the peace symbol display unimpeded by adverse state action. *Id.*, at 569.

Wyner would not have qualified for an award of counsel fees, the court recognized, had the preliminary injunction

rested on a mistake of law. *Id.*, at 568, 569–570. But it was "new developments," the court said, *id.*, at 569, not any legal error, that accounted for her failure "to achieve actual success on the merits at the permanent injunction stage," *id.*, at 569, n. 7. Plaintiff and others participating in the display, as Wyner's counsel admitted, did not stay behind the barrier at the peace symbol display, *id.*, at 569; further, the court noted, "a fair reading of the record show[ed] that [p]laintif[f] had no intention of remaining behind a [barrier] during future nude expressive works," *ibid.* The likelihood of success shown at the preliminary injunction stage, the court explained, *id.*, at 569, n. 7, had been overtaken by the subsequent "demonstrat[ion] that the less restrictive alternative," *i.e.*, a cloth screen or other barrier, "was not sufficient to protect the government's interest," *id.*, at 569. But that demonstration, the court concluded, did not bar an award of fees, because the "new facts" emerged only at the summary judgment stage. *Ibid.* We granted certiorari, *Struhs* v. *Wyner*, 549 U. S. ___ (2007), and now reverse.

## II

"The touchstone of the prevailing party inquiry," this Court has stated, is "the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Assn.* v. *Garland Independent School Dist.*, 489 U. S. 782, 792–793 (1989). See *Hewitt* v. *Helms*, 482 U. S. 755, 760 (1987) (plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail"); *Maher* v. *Gagne*, 448 U. S. 122, 129 (1980) (upholding fees where plaintiffs settled and obtained a consent decree); cf. *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 605 (2001) (precedent "counsel[s] against holding that the term 'prevailing party' authorizes an award of attorney's fees

*without* a corresponding alteration in the legal relationship of the parties").[3] The petitioning state officials maintain that plaintiff here does not satisfy that standard for, as a consequence of the final summary judgment, "[t]he state law whose constitutionality [Wyner] attacked [*i.e.*, the Bathing Suit Rule,] remains valid and enforceable today." Brief for Petitioners 3. The District Court left no doubt on that score, the state officials emphasize; ordering final judgment for defendants, the court expressed, in the bottom line of its opinion, its "hope" that plaintiff would continue to use the park, "albeit not in the nude." Summary Judgment Order, App. to Pet. for Cert. 46a.

Wyner, on the other hand, urges that despite the denial of a permanent injunction, she got precisely what she wanted when she commenced this litigation: permission to create the nude peace symbol without state interference. That fleeting success, however, did not establish that she prevailed on the gravamen of her plea for injunctive relief, *i.e.*, her charge that the state officials had denied her and other participants in the peace symbol display "the right to engage in constitutionally protected expressive activities." App. 18. Prevailing party status, we hold, does not

---

[3] *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources*, 532 U. S. 598, 600 (2001), held that the term "prevailing party" in the fee-shifting provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990 does not "includ[e] a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." The dissent in *Buckhannon* would have deemed such a plaintiff "prevailing," not because of any *temporary* relief gained (in that case, a consent stay pending litigation), but because the lawsuit caused the State to amend its laws, terminating the controversy between the parties, and *permanently* giving plaintiff the real-world outcome it sought. See *id.,* at 622, 624–625 (opinion of GINSBURG, J.). Our decision today is consistent with the views of both the majority and the dissenters in *Buckhannon*.

attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case.[4]

At the preliminary injunction stage, the court is called upon to assess the probability of the plaintiff's ultimate success on the merits. See, *e.g.*, *Ashcroft* v. *American Civil Liberties Union*, 542 U. S. 656, 666 (2004); *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 931 (1975). The foundation for that assessment will be more or less secure depending on the thoroughness of the exploration undertaken by the parties and the court. In some cases, the proceedings prior to a grant of temporary relief are searching; in others, little time and resources are spent on the threshold contest.

In this case, the preliminary injunction hearing was necessarily hasty and abbreviated. Held one day after the complaint was filed and one day before the event, the timing afforded the state officer defendants little opportunity to oppose Wyner's emergency motion. Counsel for the state defendants appeared only by telephone. App. 36. The emergency proceeding allowed no time for discovery, nor for adequate review of documents or preparation and presentation of witnesses. See *id.*, at 38–39. The provisional relief immediately granted expired before appellate review could be gained, and the court's threshold ruling would have no preclusive effect in the continuing litigation. Both the District Court and the Court of Appeals considered the preliminary injunction a moot issue, not fit for reexamination or review, once the display took place. See Summary Judgment Order, App. to Pet. for Cert. 34a; Omnibus Order, App. to Brief in Opposition 3a–4a; 179 Fed. Appx., at 567, n. 1; cf. *Lewis* v. *Continental Bank*

---

[4] In resolving Wyner's claim for counsel fees, we express no opinion on the dimensions of the First Amendment's protection for artworks that involve nudity.

*Corp.*, 494 U. S. 472, 477–479 (1990). In short, the provisional relief granted terminated only the parties' opening engagement. Its tentative character, in view of the continuation of the litigation to definitively resolve the controversy, would have made a fee request at the initial stage premature.

Of controlling importance to our decision, the eventual ruling on the merits for defendants, after both sides considered the case fit for final adjudication, superseded the preliminary ruling. Wyner's temporary success rested on a premise the District Court ultimately rejected. That court granted preliminary relief on the understanding that a curtain or screen would adequately serve Florida's interest in shielding the public from nudity that recreational beach users did not wish to see. See *supra*, at 3–4; 254 F. Supp. 2d, at 1303 (noting that the parties had previously agreed upon "a number of . . . manner restrictions that are far less restrictive than the total ban on nudity"). At the summary judgment stage, with the benefit of a fuller record, the District Court recognized that its initial assessment was incorrect. Participants in the peace symbol display were in fact unwilling to stay behind a screen that separated them from other park visitors. See Summary Judgment Order, App. to Pet. for Cert. 42a. See also App. 108 (acknowledgment by Wyner's counsel that participants in the February 14, 2003 protest "in effec[t] ignored the screen"). In light of the demonstrated inadequacy of the screen to contain the nude display, the District Court determined that enforcement of the Bathing Suit Rule was necessary to "preserv[e] park aesthetics" and "protect the experiences of the visiting public." Summary Judgment Order, App. to Pet. for Cert. 41a, 42a.

Wyner contends that the preliminary injunction was not undermined by the subsequent adjudication on the merits because the decision to grant preliminary relief was an "as applied" ruling. In developing this argument, she asserts

that the officials engaged in impermissible content-based administration of the Bathing Suit Rule. But the District Court assumed, "for the purposes of [its initial] order," the content neutrality of the state officials' conduct. See 254 F. Supp. 2d, at 1302. See also 179 Fed. Appx., at 568, and n. 4 (reiterating that, "for the sake of the preliminary injunction order," the District Court "assumed content neutrality"). That specification is controlling. See Fed. Rule Civ. Proc. 65(d) (requiring every injunction to "set forth the reasons for its issuance" and "be specific in terms"). See also *Schmidt* v. *Lessard*, 414 U. S. 473, 476 (1974) *(per curiam)* (Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders.").

The final decision in Wyner's case rejected the same claim she advanced in her preliminary injunction motion: that the state law banning nudity in parks was unconstitutional as applied to expressive, nonerotic nudity. At the end of the fray, Florida's Bathing Suit Rule remained intact, and Wyner had gained no enduring "chang[e] [in] the legal relationship" between herself and the state officials she sued. See *Texas State Teachers Assn.*, 489 U. S., at 792.

## III

Wyner is not a prevailing party, we conclude, for her initial victory was ephemeral. A plaintiff who "secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her]," has "[won] a battle but los[t] the war." *Watson* v. *County of Riverside*, 300 F. 3d 1092, 1096 (CA9 2002). We are presented with, and therefore decide, no broader issue in this case.

We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may

sometimes warrant an award of counsel fees. We decide only that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under §1988(b) if the merits of the case are ultimately decided against her.

*    *    *

For the reasons stated, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*