PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4260
_____

EDDIE MCBRIDE; LEONARD RILEY, JR.;
EDDIE KNIGHT; CHARLES S. MILLER-BEY

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-01-cv-00005)
District Judge:  Honorable Leonard P. Stark

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2014

BEFORE:  FUENTES, GREENAWAY, JR., and
NYGAARD, *Circuit Judges*

(Filed: February 19, 2015)

Stephen B. Potter, Esq.
Potter, Carmine & Associates
840 North Union Street
P.O. Box 514
Wilmington, DE 19899

John P. Sheridan, Esq.
Marrinan & Mazzola Mardon
26 Broadway, 17th Floor
New York, NY 10004
        *Counsel for Appellant*

Michael J. Goldberg, Esq.
73 Harrowgate Drive
Cherry Hill, NJ 08003

Perry F. Goldlust, Esq.
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899
        *Counsel for Appellees*

_____

OPINION
_____

NYGAARD, *Circuit Judge.*

2

## I.

The International Longshoremen's Association challenges the District Court's order denying its motion for relief from judgment under Fed. R. Civ. P. 60(b)(5). The Union argues that the Court mistakenly classified Eddie Knight as a prevailing party and wrongly awarded him attorney's fees in the amount of $243,758.34, including costs and post-judgment fees. The Union also questions whether the District Court even had jurisdiction to make the award, claiming it did more than our mandate authorized it to do in the Union's prior appeal. We will affirm.

## II

This case has been around since 2001 and this is the third appeal we have heard from these parties.[1] Knight is a member of the International Longshoremen's Association, Local 1694, and was financial secretary for the Local. In 2000, he distributed a flier that said the Local was hosting a group known as the Worker's Coalition. Adam McBride, executive director of the Diamond State Port Corporation (created by the State of Delaware to operate the Port of Wilmington where members of Local 1694 work) saw the flier Knight distributed and offered to be a speaker. McBride also contributed $500—paying it directly to the hotel where the meeting was happening.

---

[1] *See Knight v. International Longshoremen's Association,* 457 F.3d 331 (3d Cir. 2006); *Knight v. International Longshoremen's Association,* 527 Fed. App'x. 187 (3d Cir. 2013).

Shortly after McBride did these things, the Union's national vice president, James Paylor, called McBride and told him that the Worker's Coalition was not affiliated with the Union. McBride withdrew his offer to be a speaker, but he did not ask for the $500 to be returned.

Knight filed Union charges against Paylor for interfering with the Local. Paylor counter-charged Knight. He accused him of making frivolous claims that were detrimental to the Union. He also said that Knight used the Union name without permission, violating Article XXVII of the Union constitution. The Union put together a board to hear the charges. The hearing board cleared Paylor, but decided that Knight committed three violations: he misled the executive director of the Corporation to believe that the Union endorsed the Worker's Coalition; he violated Section 302 of the Labor-Management Relations Act (29 U.S.C. §186(b)) by accepting a gift from an employer; and, he used the Union and Local name, without permission, to solicit funds from an employer. It recommended that the Union's Executive Council suspend Knight and order him, personally, to repay the $500 given by Diamond State Port Corporation. The Executive Council adopted the recommendations.

Knight filed suit, claiming that Article XXVII of the Union's constitution—prohibiting use of its name—violated his free speech rights. He also asserted against the Union three claims under the Labor Management Reporting and Disclosure Act (29 U.S.C. § 411). Specifically, he alleged that the Union: refused to allow him to record his disciplinary hearing; selected a biased union member to serve on the board; and failed to give union members proper notice about the Act, violating Section 105. The District Court

4

abstained on the free speech issue and ruled against Knight on the due process claims.

We reversed the District Court's order in 2006 and remanded the case. We ruled that the District Court should not have abstained, and decided that Article XXVII was too broad, chilling the free speech rights of union members under the Labor Management Relations Act. The remand instructed the District Court to consider changing Article XXVII of the Union's constitution to apply more narrowly to the misuse of the Union name. We also reversed the District Court's order on all of Knight's other claims, ruling that the Union violated due process under the Labor Management Reporting and Disclosure Act: by refusing his request to record the hearing; by failing to give him an impartial disciplinary hearing committee; and, by failing to properly inform its members about the Act. Our remand instructed the District Court to determine the appropriate remedy for Knight. Later, in a separate order, we awarded attorney's fees to Knight in the amount of $64,285.

Following our remand, the District Court ordered the Union to revise Article XXVII and to create a new policy for distributing copies of summaries of the Labor Management Reporting and Disclosure Act. The District Court also ordered the Union to give Knight a new hearing with an impartial tribunal, and to allow Knight to record the hearing. The Union complied with the order on the due process issues regarding bias and a tape-recorded record, and with improving its efforts to distribute information about the Act. It did not, however, immediately fulfill the requirements of the order to change its constitution.

Before the Union's ethics officer (who was accepted by both parties as unbiased) the Union asked for a ruling that Knight should be disciplined under Article XVIII of the Union constitution for conduct detrimental to the welfare of the Union by violating Section 302(a) of the Labor Management Relations Act. The hearing was recorded, and the ethics officer of the Union presided. The officer decided that Knight did not "technically" violate section 302(a) because the Corporation who gave the $500 did not fit the definition of an employer under that section. But, the officer went on to conclude that, at the time of the first hearing, it was reasonable for the Union to decide that Knight "violated the spirit and intent of §302(b) and to direct the return of the money."

Knight and the Union then filed summary judgment motions with the District Court. The District Court denied most of the parties' claims, but it did order a hearing on Knight's assertion that the Union never charged him with violating the spirit of section 302(b), infringing his due process right under section 101(a)(5) of the Act. It also instructed the parties to present evidence regarding Knight's request for compensatory and punitive damages.[2] The District Court decided that the Union violated Knight's due process rights because it did not give him adequate notice of the misconduct for which he was found guilty. It also ruled that Knight was entitled to be reimbursed $500 for the fine that he paid to the Union (and post-judgment interest on that amount). However, it concluded that he did not present

---

[2] The District Court also compelled the Union to comply with its earlier order to amend the constitution.

6

enough evidence to justify either compensatory damages for lost income or punitive damages.[3]

Shortly after the District Court entered this order, Knight filed motions to set aside the judgment, to alter the judgment for prejudgment interest, and to recover attorney's fees and costs. Knight then appealed the order on the issue of damages. The Union cross-appealed the District Court's order, arguing that it did not violate Knight's due process rights. We stayed the appeal and cross-appeal while the District Court decided the post-judgment motions.

The District Court eventually granted Knight's motion for attorney's fees and costs, awarding him $295,971.87 in fees and costs. Citing to *Ruocchio v. United Transp. Union,* 181 F.3d 376, 388 (3d Cir. 1999), it concluded that Knight was a prevailing party who conferred a common benefit to all union members because of his successful free speech and due process challenges. The Union conceded that Knight's successful free speech and section 105 claims conferred a common benefit. The District Court concluded that the required changes to the disciplinary hearing also conferred a common benefit because they would encourage the Union to pay more attention to procedural fairness in hearings that would follow, and make members aware of their due process rights. It denied the rest of Knight's post-judgment motions.

The Union amended its appeal in light of the attorney's fees and costs awards, preserving this issue, but neither party

---

[3] The District Court invited Knight to file a motion and brief for prejudgment interest, but entered the final order before he was able to do so.

briefed it and we did not address it. In our 2013 decision, we agreed with the Union that Knight's due process rights under section 101(a)(5) of the Act were not violated in the second hearing, and we disagreed with Knight that damages should be awarded. Before we issued our mandate, Knight filed a motion with the District Court to require the surety to pay attorney's fees. In the alternative, Knight wanted the District Court to order the Union to continue the supersedeas bond they posted, or to put up a substitute bond in an amount to cover Knight's attorney's fees award. The Union filed for relief from judgment under Rule 60(b)(5) of the Federal Rules of Civil Procedure, arguing that Knight no longer was a prevailing party and could not claim attorney's fees. The District Court denied the Union's motion for relief and ultimately awarded Knight attorney's fees, costs, and post-judgment interest. It based the award on its conclusion that, because of Knight's suit, Knight and other Union members: can no longer be disciplined for making harmless references to the Union name or logo; are more aware of certain due process rights at disciplinary hearings; and, are properly informed about the Act. It adjusted the amount of the judgment downward to $243,758.34, in part to account for our reversal on Knight's due process claim in the second round. The Union now appeals the denial of their motion for relief.

## III.

The Union first says that our order in 2013 remanded the case to the District Court to do only one thing: vacate the

8

award of damages.[4]  They maintain that the District Court did not have authority to do anything else.  This is incorrect.[5]

There is no question that the District Court was required to follow our mandate (*Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)); but, there is no basis here for the Union to say that the District Court acted improperly.  "On remand, a trial court is free 'to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision.'"  *Casey v. Planned Parenthood of Southeastern Pennsylvania,* 14 F.3d 848, 857 (3d Cir. 1994) (quoting *Bankers Trust Co.,* 761 F.2d at 950).  Knight's appeal focused on the District Court's damages ruling.  The Union's cross appeal challenged the District Court's ruling that the second disciplinary hearing violated due process under section 101(a)(5) of the Act.  These are the issues we decided.  It is true that the Union amended their cross appeal to add the District Court's later award of attorney's fees.[6]  However, as we said, no one briefed the issue and we did not rule on it.  Therefore, our mandate did not prevent the District Court from deciding Knight's post-appeal motions on the supersedeas bond and attorney's fees,

---

[4] Our appellate jurisdiction in this case is based upon 28 U.S.C. § 1291.

[5] We review this question de novo.  *United States v. Kennedy,* 682 F.3d 244, 253 n.7 (3d Cir. 2012).

[6] The District Court had jurisdiction to rule on attorney's fees while the appeal was pending.  *See Venen v. Sweet*, 758 F.2d 117, 120 n. 2 (3d Cir. 1985).

9

and the Union's motion for relief. The District Court had jurisdiction to decide these motions.

The Union's second claim is that the District Court wrongly denied its Rule 60(b)(5) motion for relief from judgment. The Rule says the following:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable. . . .

Fed. R. Civ. P. 60(b)(5). We have plenary review over the District Court's interpretation and application of legal rules and doctrines. *Le v. University of Pennsylvania,* 321 F.3d 403, 405-406 (3d Cir. 2003). Every other aspect of the District Court's decision to deny the motion is examined for an abuse of discretion. *Wilson v. Fenton*, 684 F.2d 249, 251 (3d Cir. 1982). Our scope of review is narrow; we do not examine the underlying judgment. *Id.*

The Union has the burden of convincing us that the District Court misinterpreted the legal definition of prevailing party here and that, because of this misunderstanding, it relied on the wrong facts to decide its motion. Their argument, essentially, is that the District Court should have focused on

10

the relief that we gave the Union in 2013 and should have minimized or ignored the judgment in Knight's favor that we filed in 2006.

The Union says that, without a final judgment in his favor, Knight is no longer a prevailing party. Concentrating on his underlying motive for the lawsuit (reversing the Union's discipline against him) as the centerpiece of any determination on his success in this lawsuit, they say Knight lost the battle: his suspension was not revoked and his fine was not reduced. Mirroring language in Supreme Court precedent on attorney's fees, they contend that "the Court has not issued an enforceable judgment against Defendant ILA on Plaintiff Knight's [Labor Management Reporting and Disclosure Act] § 101 Claim. The legal relationship between Knight and the [Union] was not altered." *See Buckhannon Bd. & Care Home Inc. v. West Virginia Dept. of Health and Human Res.,* 532 U.S. 598, 603-04 (2001).

There is truth in what the Union is saying. Our ruling on Knight's second appeal ended his due process challenge. This wiped out his entitlement to any damages, and it eliminated anyone's credible belief that flaws in the Union's disciplinary process were affecting the outcome of the hearing. However, the Union is convinced that the District Court lost sight of all of this and analyzed the prevailing party issue in a way that contradicts *Buckhannon's* ruling. It went astray, they claim, by relying on the order we issued in 2006 (granting Knight relief on his due process and free speech claims) rather than focusing exclusively on the final judgment in its favor. We disagree. The Union approaches this argument from different perspectives, and we will examine each.

11

The Union underscores the fact that Knight did not receive any damages in this case. Citing to *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988), it insists that a party who is not awarded damages cannot "prevail." *Rhodes* does not really say this; but, be that as it may, the Union's position does not account for the effect that the common benefit doctrine has here. Although Title I of the Labor Management Reporting and Disclosure Act does not provide an award of attorney's fees, it is settled law that union members who successfully vindicate rights under Title I of the Act can seek reimbursement under the common benefit doctrine. *Pawlak v. Greenawalt,* 713 F.2d 972, 975 (3d Cir. 1983) (citing *Hall v. Cole*, 412 U.S. 1, 7-9 (1973)). The doctrine applies when "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class.'" *Id.* (quoting *Hall*, 412 U.S. at 5).

Before *Hall,* the Supreme Court had already brushed aside concerns about damage awards when it considered the issue of attorney's fees under the common benefit doctrine. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 (1970). "The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award. . . ." *Id.* at 392. The Court concentrated on the "stare decisis effect" of the case upon future suits that could arise from the newly created precedent. *Id.* at 393. It also credited the judgment resulting from the suit as "vindicating the statutory policy" by contributing to a fair and informed voting process for the shareholders. *Id.* at 396. Notwithstanding all of this, the Supreme Court set a substantial threshold for judging a party as successful under this doctrine. Quoting the Minnesota Supreme Court, it cautioned that the common benefit "must be something more

12

than technical in its consequence and be one that accomplishes a result that corrects or prevents an abuse which would be prejudicial to the rights and interests [of the beneficiaries] or affect the enjoyment or protection of an essential right [of the beneficiaries]." *Id.* (quoting *Bosch v. Meeker Cooperative Light & Power Assn.*, 101 N.W. 2d 423, 427 (Minn. 1960)).

"Success" in lawsuits is a slippery concept that can shift between the parties as different phases of the case unfold. Courts always must be cautious to avoid authorizing attorney's fees where a party has "won a battle but lost the war." *National Amusements, Inc., v. Borough of Palmyra*, 716 F. 3d 57, 65 (3d Cir. 2013) (internal brackets omitted). That concern is at the heart of our review here. We understand the fact that Knight launched this lawsuit because he wanted to reverse the Union's decision to fine and suspend him and that, ultimately, this did not happen. But, his complaint, which provides a fair basis for figuring out what the legal "war" was about, pointed to problems that could not be fixed with money damages. It is important to us that, citing to the Act, the focus of Knight's lawsuit was on challenging the validity of the process used to discipline him. It is also matters that his suit claimed problems that were not merely technical or incidental mistakes in the process as it applied to him. By claiming that the Union's constitution infringed his free speech rights, and that basic elements of the Union's disciplinary process violated his due process rights, he raised larger issues about structural elements of his disciplinary process. All of this gave the District Court good reason—consistent with *Mills* and *Pawlak*—to look beyond the absence of monetary damages in the final judgment to figure out if Knight's lawsuit was successful.

13

The Union goes further, though, arguing that the District Court's opinion mistakenly relied on our judgment in 2006 and ignored or contradicted the final judgment in this case. They make three related arguments to support this idea: (1) the 2006 order granting relief was an interim order; (2) the relief that Knight got in 2006 was only a remand for a new hearing; and (3) our order in 2013 reversed all prior orders that supported any claim that Knight prevailed.

The Union's argument that attorney's fees cannot arise from an interim order begins with a point that we accept. The Union is correct that the order we issued in 2006 contained a remand that precluded its finality.[7]   However, the District

---

[7] The Restatement of Judgments says the following:

> Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.

Restatement (Second) of Judgments § 13(b) (1982). "An order that establishes liability but leaves open the question of damages or other remedies ... [is] not final for purposes of preclusion under traditional analysis." 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal

14

Court ordered attorney's fees in this case after a final judgment had been rendered. It did rely on unchallenged rulings from a non-final order, but it did so only after all issues in the case had been resolved.[8]

The Union is also right when it says, citing to the Supreme Court, that a party's victory on an interim (interlocutory) order is often not enough to claim entitlement to attorney's fees. *Hanrahan v. Hampton,* 446 U.S. 754, 759 (1980). Yet, they go too far when they say that an interim order can never ground attorney's fees. The Court in *Hanrahan*, ruling in a civil rights case, said: "It seems apparent . . . that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims." *Id.* at 757-8. It clarified this statement, saying: "'[T]he entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees.'" *Id.* at 757 (quoting H.R. Rep. No. 94-1558, p. 8 (1976)). Therefore, even were we to say that the attorney's fees in this case were awarded on an interim order—an assertion with which we disagree—that alone would not be enough to reverse the District Court's decision here.

The Union moves on to the substance of our 2006 order, saying that it was essentially a remand for a new hearing. They cite to a string of cases where we and other

---

Practice and Procedure § 4432 (2d ed. 2002) (citing *G. & C. Merriam Co. v. Saalfield,* 241 U.S. 22, 28, 29 (1916)).

[8] See *infra* pp. 15-16.

courts have decided that a remand for a new trial is not a victory that counts as having "prevailed." *See, e.g., Clark v. Township of Falls,* 890 F.2d 625, 626 (3d Cir. 1989). Again, there is a kernel of truth in the Union's argument. In many cases where a court of appeals remands for a new trial, the remand puts the plaintiff "no closer to a verdict in her favor than she was before the trial first began." *Swietlowich v. Bucks County*, 620 F.2d 33, 34 (3d Cir. 1980) (remand for new trial due to errors in jury instruction). As the Supreme Court said so elegantly, such victories are "ephemeral." *Sole v. Wyner,* 551 U.S. 74, 76 (2007) (plaintiff won a preliminary injunction but ultimately lost on merits of claim). But, none of that really matters here because—as we suspect the Union is well aware—our order in 2006 did not remand for a new trial.

Our ruling in 2006 gave Knight a final decision in his favor on every claim he raised in his complaint. Our Opinion suggested to the District Court some courses of action for implementing our order, but the remand ultimately gave the District Court discretion to figure out the best way to remedy the due process and free speech violations. The District Court used this discretion to order the Union to change its constitution, to implement new procedures at its disciplinary hearing, and to come up with a better way of distributing to union members information about the Labor Management Reporting and Disclosure Act. It also decided that, with these changes, Knight was entitled to a new disciplinary hearing. We never directed the District Court to do this, nor would it have really mattered if we did. As suggested in *Hanrahan*, the key issue here is whether the order determined substantial rights of the parties. *Hanrahan*, 446 U.S. at 757. The issue before us in 2006 was whether the Union respected Knight's

16

rights and complied with the Act when it disciplined him, not whether the Union's decision to discipline him was right or wrong.[9]  Our order, and the District Court's order on remand, did not return Knight to "square-one."  His lawsuit succeeded:  he received a judgment stating that the Union breached important rights, and he obtained orders compelling the Union to change its constitution and its procedures.[10]

This leads us to the Union's final argument:  that our order in 2013 reversed any possible basis for Knight to claim that he was a prevailing party.  Our conclusion on this issue is very simple.  There is no credible way of validating the Union's argument that our holding in 2013 reversed our ruling in 2006.  Our decision in 2013, rejecting Knight's new

---

[9] In fact, we had a clear-eyed view of the possibility that, if given a new hearing, Knight might still face discipline.  *See Knight v. Int'l Longshoremen's Ass'n.,* 457 F.3d at 340 ("Because we do not have a transcript of the hearing we do not know the basis for the committee to have characterized Knight's receipt of the donation from Adam McBride (admittedly improper under the statute) as a 'solicitation.'").

[10] The Union also likens the District Court's orders, implementing our 2006 judgment, to preliminary injunctions.  However, this description makes no sense because the orders did not provide prospective relief.  *Sypniewski v. Warren Hills Regional Board of Education,* 307 F.3d 243, 252 (3d Cir. 2002).  The District Court ordered permanent changes to the Union's procedures and its constitution, consistent with our conclusions about the Union's violations of due process and free speech rights.

17

challenges to the fairness of the second hearing did nothing to affect our holding about the problems arising from the first hearing. Our holding in 2006 was never appealed by the Union, and has remained undisturbed through the remainder of this case. Our order in 2013 did reverse the District Court's order, but that reversal was limited to the District Court's conclusions about a due process violation in the second hearing and Knight's entitlement to damages. We did not touch the issue of attorney's fees or the underlying issue of who prevailed in this case. Therefore, we are not persuaded by the Union's argument that the District Court's decision to deny the Union's motion for relief under Rule 60 contradicted or ignored our final judgment in this case.

For these reasons, we hold that the District Court did not err in its understanding and application of the legal concept of "prevailing party" under the common benefit doctrine to the Union's motion. The Union's request for relief was entirely based on its claim that our decision in 2013 took away Knight's status as a prevailing party. The District Court asked the proper legal question under the common benefit doctrine to decide this motion: did Knight successfully vindicate rights under Title I of the Act? To answer that question, it was necessary for the District Court to examine the entire case, including our uncontested rulings from 2006.

We next turn to the District Court's application of the facts to the legal standard. As we have just noted, the common benefit doctrine required the District Court to ask whether, at the end of the day, Knight vindicated Title I rights in a way that was significant to the union members at-large. Framed in this way, we conclude that the District Court did

18

not abuse its discretion by basing its decision on Knight's victories in 2006, rather than his defeat in 2013.

Again, the Union presses us to place Knight's motives for bringing the lawsuit at the center of any decision about whether he prevailed. However, in *Pawlak*, we separated the union members' personal motives for challenging the union on free speech issues (and the ultimate electoral defeat of the by-laws they championed) from the benefit that was given to union membership by the suit. We concluded that the suit, resulting in a consent order, vindicated their freedom of speech, "'dispelled the 'chill' cast upon the rights of all Union members and contributed to the preservation of union democracy." *Pawlak,* 713 F.2d at 980. We reasoned that the consent order "contributed to a fair process in bylaws referenda . . . . for it now stands as precedent for subsequent bylaws referenda." *Id.* Similarly, we do not agree with the Union that a union member's lack of success in overturning his discipline must wipe out the possibility that union members at-large benefited from changes he won in the union's disciplinary procedures earlier in the litigation. It was appropriate for the District Court to weigh the impact of the uncontested rulings we made in 2006 to analyze whether Knight's case had a significant "stare decisis effect." [11]

---

[11] We note that it was particularly proper here where the Act authorizing Knight's causes of action was designed to foster the "full and active participation by the rank and file in the affairs of the union." *Id.* at 975 (quoting *Hall,* 412 U.S. at 7-8). Though the District Court did not discuss the claims in these terms, it is legitimate, under common benefit analysis, to assess whether the suit "vindicate[ed] statutory policy." *Mills,* 396 U.S. at 396.

All of this leads us to conclude that the District Court did not commit any errors by considering the impact of Knight's due process and free speech successes from the first hearing. This was plainly relevant to the question raised by the Union in its motion: whether Knight could still be regarded as a prevailing party. It adjusted downward the fees associated with Knight's claims arising from the second disciplinary hearing, but left intact the remainder of the award. All of this was well within the discretion of the District Court.

For all of these reasons, we will hold that the District Court exercised sound judgment and acted within its discretion when it denied the Union's motion for relief from judgment.