### TRI–CITY COMMUNITY ACTION PROGRAM, INC., 3 John Does, and Jane Doe, Plaintiffs,

v.

### CITY OF MALDEN, Paul E. Johnson, Charles Ioven, Timothy L. Glynn, Arnold Kaufman, Robert Foley, Diane M. Chuha, Hattie Broome, David D'Arcangelo, and John Spadafora, Defendants.

### Civil Action No. 06cv12246–NG.

United States District Court, D. Massachusetts.

Jan. 22, 2010.

308

William J. Hunt, Michael J. Rossi, Clark, Hunt, Ahern & Embry, Cambridge, MA, for Plaintiffs.

Charles Toomajian, City Solicitor, Kathryn M. Fallon, Malden Legal Department, Malden, MA, for Defendants.

### *MEMORANDUM AND ORDER RE: MOTION FOR ATTORNEY FEES & COSTS*

GERTNER, District Judge:

## I. *INTRODUCTION*

Plaintiffs are a nonprofit organization, Tri–City Community Action Program, Inc., ("Tri–CAP"), that provides housing to the homeless, and four disabled homeless persons ("Jane Doe and three John Does") who planned to live in the rooming house that Tri–CAP was to renovate. They sued the City of Malden ("the City") to compel the issuance of a building permit that would allow Tri–Cap to retrofit the house in compliance with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq.

There is no question that the plaintiffs were successful, admirably so. Plaintiffs obtained a preliminary injunction which ordered the City to refrain from interfering with the construction of the rooming house. By May of 2008, while the preliminary injunction was in force, Tri–CAP

completed the construction, thereby rendering the suit moot.[1]

Plaintiffs now move for an award of attorney fees and costs as prevailing parties under the fee-shifting provision of the Fair Housing Act Amendments of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2). As I describe below, there is no question that plaintiffs deserve to be paid for their efforts, and that the law requires it. The only question is the amount. For the reasons described below, I **AWARD** $48,994.00 in fees and $1,005.00 in costs.

## II. *BACKGROUND*

Plaintiffs are Tri–CAP, a Malden-based nonprofit that provides housing and services to chronically homeless and disabled adults, and four homeless persons slated to live in a new Tri–CAP facility. On January 11, 2006, Tri–CAP entered into a purchase and sale agreement ("PSA") to buy a fourteen-room house for $595,000. The house was already a rooming house—one of the last four licensed rooming houses in Malden—but was deteriorating and underutilized. Tri–CAP planned $1.37 million in renovations to bring the building into compliance with the ADA. It had arranged for the funding for the project, much of it from the U.S. Department of Housing and Urban Development ("HUD").

In February 2006, Malden's building inspector informed Tri–CAP that he would not issue a building permit. Tri–CAP submitted revised plans in April 2006, which were reviewed but then denied again in August 2006. Tri–CAP then applied to the Malden Planning Board for a special permit to make the renovations. At a public hearing on October 11, 2006, several neighborhood residents raised concerns about the peace and safety of the neighborhood and their children. The meeting was continued until November 15, 2006, at which point the Board denied the permit application, without any statement of reasons.

Plaintiffs filed claims under the FHAA, 42 U.S.C. § 3601 et seq., for defendants' alleged discriminatory actions; 42 U.S.C. § 1983, for equal protection and due process violations; Mass. Gen. Laws ch. 40A, § 3 for abuse of discretion in connection with the denial of a permit; and various state constitutional and statutory provisions that protect disabled persons against discrimination. Asserting irreparable harm in connection with the delay in obtaining the permit and the risk of losing their HUD grant, plaintiffs sought injunctive relief, as well as damages.[2]

## III. *PROCEDURAL HISTORY*

On December 15, 2006, plaintiffs filed a motion for a preliminary injunction. Having had absolutely no response from the defendants to its moving papers and facing a deadline, namely the building seller's demand for assurances that the permit be obtained by January 31, 2007, plaintiffs moved for a temporary restraining order ("TRO") on January 18, 2007. The defendants continued to ignore the suit. Plaintiffs filed a motion for default judgment on January 18, 2007, renewing it on January 30, 2007. But while defendants finally responded by opposing the default judgment, they did not oppose the motion for a preliminary injunction.

---

1. After the instant petition was filed, plaintiffs moved for a permanent injunction. No permanent injunction is necessary since the relief requested has already been obtained—the construction and permitting of the rooming house that is the subject of this litigation.

2. In light of the parties' agreement that the case is now moot on all fronts, the plaintiffs are clearly abandoning their prayer for compensatory and punitive damages.

I granted a preliminary injunction enjoining the City from "interfering with or preventing Tri–City Community Action Program from purchasing, occupying and carrying out modifications" to the property. Electronic Order (January 31, 2007). And, while I denied the renewed motion for default judgment, I chastised the defendants:

> The Court will not default the defendants, even though their explanation for the total failure to respond to plaintiffs' pleadings is barely reasonable. The preliminary injunction which the Court entered yesterday protects the plaintiffs from the immediate consequences of the defendants' dilatoriness. Under the circumstances, the litigation may proceed; a section 16(b) conference will be scheduled shortly.

Electronic Order (January 31, 2007). The preliminary injunction endorsement found that the plaintiffs were substantially likely to succeed on the merits of their claims as required by the Rule 65, Fed. R. Civ. Pro (all the while underscoring the court's concern with defendant's conduct):

> There being no opposition, this Court GRANTS in part plaintiffs' motion for a preliminary injunction (docket # 2). Defendants are hereby ENJOINED from interfering with or preventing Tri-City Community Action Program, Inc., from purchasing, occupying and carrying out modifications to the property at 115 Washington St. in Malden set out in plaintiff's permit application submitted on 8/30/06 to the Malden Planning Board. Pl.Ex. G (docket # 3–8), Exhibit H (docket # 3–9). The motion for a preliminary injunction is denied with respect to monetary damages, and attorneys' fees which are not an appropriate subject for a preliminary injunction. The case was filed on December 15, 2006; a motion for a preliminary injunc-

tion accompanied the filing. The complaint was served with answers due on during the first week in January, 2007. The plaintiff—under considerable time pressure as described in its preliminary injunction papers, namely a January 31, 2007 deadline for the purchase of the property which was to be used for transitional housing—moved for a default and indicated to the defendants that it would do so by letter. The defendants did not respond in any way—by letter, by phone call, much less by pleading—until today, the very deadline that was the subject of the preliminary injunction. When the defendants finally responded, their response was only to seek to set aside the default, and not to oppose the preliminary injunction. *On its face, the motion for preliminary injunction meets the standards of Rule 65, namely the likelihood of success on the merits, coupled with irreparable harm.*

*Id.* (Italics supplied.)

On February 12, 2007, I ordered defendants to submit an answer. Plaintiffs filed a second motion for default judgment on March 12, 2007; the defendants had still not responded to the lawsuit. On April 3, 2007, defendants finally filed an answer, and, in what can only be described as extraordinary indulgence, I denied yet another motion for default judgment. A scheduling order entered shortly thereafter.

With the preliminary injunction in place, construction on the rooming house proceeded. J. Mot. to Set Deadlines at 2 (document # 40). Renovations were substantially completed by May of 2008. The Malden City Council voted to renew the property's lodging house license on May 20, 2008, and the City issued a certificate of occupancy on September 15, 2008. The residence is currently fully occupied. These events rendered the case moot, leav-

ing the parties to negotiate over plaintiffs' attorneys' fees, negotiations which were not successful. On May 8, 2009, plaintiffs filed a motion for attorneys' fees and costs, to which the defendants opposed.

## IV. DISCUSSION

Under the FHAA, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). Two issues are presented here: (1) whether the plaintiffs are prevailing parties, based on the preliminary injunction, and (2) if so, what amount of attorney fees should be awarded.

### A. Plaintiffs Are Prevailing Parties

 Plaintiffs are prevailing parties under fee-shifting statutes if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (internal citations omitted). In the instant case, while no final judgment on the merits ever issued, plaintiffs obtained a preliminary injunction based in part on my finding of their probability of success on the merits. Through the enforcement of the preliminary injunction and the passage of time, the case became moot before dispositive motions could be entered.

Prior to 2001, various courts of appeals had held that plaintiffs who were similarly-situated qualified as prevailing parties. *See, e.g., Dahlem v. Bd. of Educ.*, 901 F.2d 1508, 1512 (10th Cir.1990) (male high school senior who obtained preliminary injunction permitting him to compete on girls' gymnastics team was a prevailing party, after the mooting of his claim when

the season ended that year); *Grano v. Barry*, 783 F.2d 1104, 1109 (D.C.Cir.1986) (citizens who obtained a preliminary injunction to prevent the demolition of historic tavern pending a referendum on the future of the tavern were prevailing parties, even though the referendum was later ruled unconstitutional and the tavern was demolished); *Coalition for Basic Human Needs v. King*, 691 F.2d 597, 600 (1st Cir.1982) (state welfare recipients who won an injunction pending appeal requiring the state to resume welfare payments and whose claim was then mooted by the passage of a new state budget were prevailing parties); *Williams v. Alioto*, 625 F.2d 845, 847–48 (9th Cir.1980) (plaintiffs who won preliminary injunction to stop indiscriminate stop-and-frisks of black males were prevailing parties despite mooting of their claim when the guilty parties were convicted and the investigation terminated); *Doe v. Marshall*, 622 F.2d 118, 119–20 (5th Cir.1980) (emotionally handicapped minor who obtained a preliminary injunction allowing him to play high school football was a prevailing party after the mooting of his claim upon his graduation).

While in 2001 the Supreme Court suddenly altered the landscape of attorneys' fees law, its decision does not affect the "prevailing party" designation in this case. In *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), an operator of assisted living homes failed a fire inspection because some of its residents were incapable of "self-preservation"—the ability to move oneself out of a dangerous situation, such as a fire—as required by state law. Facing an order that it shutter its facilities, the company brought suit, arguing that the self-preservation requirement violated the FHAA and ADA. The state legislature—plainly in response to the lawsuit—elimi-

nated the requirement; the district court dismissed the case as moot.

The Supreme Court in *Buckhannon* rejected the so-called "catalyst theory" of fee-shifting, which had been routinely adopted by courts around the country. Under the catalyst theory, a plaintiff is considered a prevailing party if it in fact achieves the desired result by bringing about "a voluntary change in the defendant's conduct" through the lawsuit. *Id.* at 601, 121 S.Ct. 1835. The Court held that voluntary conduct "lacks the necessary judicial *imprimatur* on the change." *Id.* at 605, 121 S.Ct. 1835. Instead, some "court-ordered 'chang[e][in] the legal relationship between [the plaintiff] and the defendant'" is required. *Id.* at 604, 121 S.Ct. 1835 (quoting *Tex. State Teachers Ass'n,* 489 U.S. at 792, 109 S.Ct. 1486) (alteration in the original). The Court cited two examples of judicial action that satisfy these criteria: "some relief" on the merits of a claim and settlement agreements enforced through a consent decree. *Id.* at 603–04, 121 S.Ct. 1835.

The case before me in effect presents a third situation in which a plaintiff is a prevailing party—where a party secures a preliminary injunction based on a judicial judgment of the likelihood of success on the merits, and the passage of time together with that injunction, provides the party with all the relief it has ever sought.

The Supreme Court has never addressed this precise issue, pre- or post-*Buckhannon. See Sole v. Wyner,* 551 U.S. 74, 86, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007) ("We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees.").[3] Nor has the First Circuit. The Third, Fifth, Ninth, and District of Columbia Circuits have held in cases similar to the one at bar that a preliminary injunction does confer prevailing party status on a plaintiff, even post-*Buckhannon.* The reasoning of those cases is persuasive.

In *People Against Police Violence v. City of Pittsburgh ("PAPV"),* 520 F.3d 226 (3d Cir.2008), organizers obtained a court order preliminarily enjoining the city from enforcing an ordinance requiring that they pre-pay costs for police protection in order to hold a rally at the local courthouse. In so doing, the court found that the ordinance was facially unconstitutional under the First Amendment. Over the course of two years, the city council drafted and redrafted the ordinance before ultimately removing the offending provisions and mooting the case. The Third Circuit held that the organizers satisfied the demands of *Buckhannon* as prevailing parties under 42 U.S.C. § 1988,[4] because the district court had made a ruling on the merits of the constitutional claim and the plaintiffs "had achieved precisely what they sought on an enduring basis." *Id.* at 236.

In *Dearmore v. City of Garland,* 519 F.3d 517 (5th Cir.2008), a property owner challenged a city ordinance that authorized warrantless inspections of single-family rental units and the penalization of owners who refused to allow such inspections. The court granted a preliminary injunction

---

**3.** In *Sole,* the Supreme Court held that a plaintiff who obtains a preliminary injunction is not a prevailing party under § 1988(b) if the preliminary injunction is later "undone by the final decision in the same case." 551 U.S. at 83, 127 S.Ct. 2188.

**4.** The Supreme Court noted in *Buckhannon* itself that the various federal fee-shifting statutes are interpreted consistently, 532 U.S. at 603 n. 4, 121 S.Ct. 1835. Indeed, courts have routinely applied *Buckhannon* to cases that do not involve either the FHAA or the ADA, *see* cases cited *infra.*

enjoining the enforcement of the ordinance, holding that it violated the Fourth Amendment. Less than two weeks later, the city council repealed the provision and the case was dismissed as moot. The court granted the property owner's attorneys' fees under § 1988. The Fifth Circuit affirmed, setting out a three-part test for prevailing party status: a plaintiff that (1) wins a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, preventing final relief on the merits, qualifies for attorney fees. *Id.* at 524.

In *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir.2002), a deputy sheriff who was suspected of using excessive force during an arrest was ordered to write a report of the incident. He was allegedly denied the opportunity to consult with an attorney beforehand and was terminated after completing the report. The court granted him a preliminary injunction enjoining the county from using the report during a hearing on his termination. The hearing came and went, rendering his suit for permanent injunctive relief moot. Nevertheless, the district court awarded attorney fees under § 1988, and the Ninth Circuit affirmed, noting that the deputy had "obtained significant, court-ordered relief that accomplished one of the main purposes of his lawsuit." *Id.* at 1096. The court further held that its result was consistent with *Buckhannon.* While judgments and consent decrees are examples of the sort of qualifying relief described by the Supreme Court, "they are not the only examples." *Id.* The court explained:

A preliminary injunction issued by a judge carries all the "judicial imprimatur" necessary to satisfy *Buckhannon.* In this case, the County was prohibited from introducing Watson's report at the termination hearing for one reason and for one reason only: because Judge Timlin said so.... [Watson] was not a mere catalyst of an extra-judicial voluntary change in conduct. There was nothing voluntary about the County's inability to use the report.

We recognize that there will be occasions when the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against him—a case of winning a battle but losing the war. The plaintiff would not be a prevailing party in that circumstance. But this case is different because Watson's claim for permanent injunctive relief was not decided on the merits. The preliminary injunction was not dissolved for lack of entitlement. Rather, Watson's claim for permanent injunction was rendered moot when his employment termination hearing was over, after the preliminary injunction had done its job.

*Id.*[5]

In *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C.Cir.2005), the D.C. Circuit held that a milk marketing cooperative that had obtained a preliminary injunction enjoining the Secretary of Agriculture from imposing a new price on butterfat, but whose claim was mooted when the Secretary promulgated a new regulation that did not impose the price, was a prevailing party under the Equal

**5.** The court held that the deputy was a prevailing party even though the district court had denied his various other federal and state claims at summary judgment. 300 F.3d at 1096.

Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A).[6] The court held that "[a]lthough *Buckhannon* decisively rejected the 'catalyst theory,' the Court clearly did not adopt a rule that plaintiffs could only be deemed 'prevailing parties' for fee-shifting purposes if they obtained a final judgment on the merits of a suit." *Id.* at 945. The court applied a three-part test that it had culled from *Buckhannon* in the earlier case of *Thomas v. National Science Foundation,* 330 F.3d 486 (D.C.Cir.2003), under which a claimant is a prevailing party if (1) there had been a court-ordered change in the legal relationship between the parties, (2) the court entered a judgment for the claimant, and (3) the claimant obtained more than a mere judicial pronouncement unaccompanied by judicial relief. *See id.* at 492–93. In *Select Milk,* the court held that the preliminary injunction constituted judgment enough; that the relief was "concrete and irreversible" under the circumstances.[7]

Plaintiffs here also satisfy *Buckhannon.* First, as the cases from the courts of appeals make clear, a preliminary injunction is a court order carrying a judicial imprimatur ever bit as compelling as that of a consent decree (the example cited by the Court in *Buckhannon* ). And while there may be preliminary injunctions that are equivocal, *this was not one of them.* I explicitly found that the motion "me[t] the standards of Rule 65, namely the likelihood of success on the merits." Electronic Order (January 31, 2007). *See Dubuc v. Green Oak Township,* 312 F.3d 736, 753 (6th Cir.2002) (stating that a preliminary injunction provides prevailing party status only "if the injunction represents 'an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff' " (quoting *Webster v. Sowders,* 846 F.2d 1032, 1036 (6th Cir.1988))).

**6.** The D.C. Circuit had previously clarified that though *Buckhannon* interpreted the FHAA and the ADA, its construction of the term "prevailing party" applied to fee claims under the EAJA. *See Thomas v. Nat'l Sci. Found.,* 330 F.3d 486, 492 (D.C.Cir.2003).

**7.** In my judgment, the Seventh Circuit, if confronted with a similar case post-*Buckhannon,* would likely agree with the outcomes discussed here. In *Young v. City of Chicago,* 202 F.3d 1000 (7th Cir.2000), the plaintiffs raised a First Amendment challenge to the establishment of a security perimeter that excluded protestors from the immediate vicinity of the 1996 Democratic National Convention. They obtained a preliminary injunction; the city appealed, but only after the convention had concluded and the case was rendered moot. Nevertheless, the Court of Appeals held that the plaintiffs were prevailing parties. After *Buckhannon,* in *Dupuy v. Samuels,* 423 F.3d 714 (7th Cir.2005), the court held that plaintiffs who had obtained a preliminary injunction were not yet entitled to attorney fees because the district court's order contemplated further proceedings on the merits. The court contrasted that case with *Young,* in

which "the case was mooted *before* they sought attorneys' fees" and there was no issue of prevailing party status being premature. *Id.* at 723. In so doing, the court reaffirmed its holding in *Young.*

Only the Fourth Circuit squarely disagrees with its sister courts. In *Smyth v. Rivero,* 282 F.3d 268 (4th Cir.2002), the court held that a preliminary injunction was insufficient to confer prevailing party status, even when the case is later mooted, because "the merits inquiry in the preliminary injunction context is necessarily abbreviated." *Id.* at 276. Nevertheless, this case may be distinguishable from the case at bar because in *Smyth,* mootness resulted from an agreement by the parties, whereas here, it resulted from plaintiffs completing the work that the preliminary injunction allowed them to pursue. Even so, I share the Seventh Circuit's sentiment that "[t]o the extent that the Fourth Circuit has adopted a per se rule that a preliminary injunction can never serve as a predicate for an interim fee award, we are in respectful disagreement." *Dupuy,* 423 F.3d at 723 n. 4.

Second, my order caused a material change in the legal relationship between the parties. It contrasts sharply with those cases in which a preliminary injunction grants only interim relief that preserves the status quo *pendente lite* until the court can resolve the merits. *See, e.g., N. Cheyenne Tribe v. Jackson,* 433 F.3d 1083, 1086–87 (8th Cir.2006) (Native American tribes were not prevailing parties by virtue of a preliminary injunction barring HUD from providing funds for construction of a shooting range near a spiritual site simply because the government withdrew the grant after the injunction issued). This injunction enjoined the defendants "from interfering with or preventing Tri–City Community Action Program, Inc. from purchasing, occupying and carrying out modifications to the property at 115 Washington St. in Malden set out in plaintiff's permit application submitted on 8/30/06 to the Malden Planning Board." Electronic Order (January 31, 2007). Before it, the City retained full authority under local law to deny Tri–CAP the building permit needed for construction, and it did. Afterwards it could not; the order effectively set aside the standard permit approval process. Put another way, but for the preliminary injunction, Tri–CAP could not legally have completed the modifications, the three John Does and one Jane Doe would not have been able to live in the refurbished rooming house, and the case would not have been rendered moot.

Third, this award of attorneys' fees does not depend on the catalyst theory of fee-shifting rejected in *Buckhannon.* Unlike *Buckhannon,* the defendants here did not voluntarily change their conduct in response to the filing of the suit. Rather, in the face of the preliminary injunction, they had no choice but to allow the construction to proceed. The preliminary injunction was responsible for the entirety of the changes that rendered the case moot.

For these reasons, I find that the plaintiffs satisfy the demands of *Buckhannon* and are prevailing parties for the purposes of the fee-shifting provision of the FHAA. I turn now to the amount of the award.

**B. *Award of Attorney Fees and Costs***

▮ Plaintiffs claim attorney fees of $84,761.00 and costs of $1,035.00. The First Circuit follows the lodestar method to determine whether the fee requested is reasonable. *Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir.1992). Under that approach, the district court multiplies the number of hours productively spent by a reasonable rate. *Id.* The court may reduce the number of hours for time "unreasonably, unnecessarily, or inefficiently devoted to the case," *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933), and it may adjust the total figure upward or downward based on the results obtained and labor actually required by the case. *Id.*

**1. *Hourly Rates***

▮ Plaintiffs request the following rates for their lawyers: $350 per hour for William J. Hunt, the founding partner and head of litigation at Clark, Hunt, Ahern & Embry; $275 per hour for Michael B. Newman, a ninth-year associate who spent more time on the case than any other attorney; $225 per hour for both Young B. Han and Michael J. Rossi, second-year associates.

▮ The reasonableness of attorneys' fees is determined by reference to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Recent orders in civil rights cases from

this jurisdiction provide some insight into the prevailing rates. *See, e.g., Iverson v. Braintree Prop. Assocs., L.P.*, No. 04–12079–NG, 2008 WL 552652, at *2–3 (D.Mass. Feb. 26, 2008) (in ADA case, allowing $325 per hour for lead attorneys with more than twenty-five years' experience, $325 for fourteenth-year associate, and $150 for associate with less than two years' experience); *Access 4 All, Inc. v. Delancey Clinton Assocs., L.P.*, No. 04–12347–KPN, 2007 WL 118940, at *3 (D.Mass. Jan. 8, 2007) (in ADA case, $275 for attorney with twenty-five years' experience, $225 for attorney with fourteen years' experience, $160 for new associate, and $90 for paralegal, given that almost all time was spent out of court); *Iverson v. Sports Depot, Inc.*, No. 00–10794–RWZ, 2002 WL 745824, at *2 (D.Mass. Feb. 20, 2002) ($275 for attorney in ADA case); *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, 105 (D.Mass.1998) (in ADA case, $140 to $325 for attorneys of varying experience); *see also Bogan v. City of Boston*, 432 F.Supp.2d 222, 229–30 (D.Mass.2006) ($300 for attorney with over thirty-five years' experience); *LaPlante v. Pepe*, 307 F.Supp.2d 219 (D.Mass.2004) (in prisoner's rights suit, $300 for litigation partner and $275 for senior associate).

In light of the prevailing rates, I find the requested rates reasonable.

## 2. *Number of Hours*

Plaintiffs claim that over 313 hours were spent on the case, producing a total of $84,761 in attorneys' fees. At first glance, as defendants argue, this seems excessive for a case that was actively litigated for only five months of the two and half years that it has been pending. The City barely contested the suit; as described above, after myriad default motions, they finally answered. They did not oppose the preliminary injunction and after it issued, the only actions on the court's docket were motions to continue status conferences because settlement discussions were supposedly ongoing. There have been no depositions, no expert designations, no paper discovery, and virtually no hearings. The City simply complied with the preliminary injunction, issued the building permit that allowed the renovation to continue, and effectively ignored the litigation. Indeed, the only thing that the City has aggressively opposed is this application for attorneys' fees.

Nevertheless, the City's failure to defend this case does not mean as they have argued, that plaintiffs should have done nothing—no research, no investigation, no strategizing. While at some point it was clear that the so called "reality on the ground," namely, the completion of the project under the authority of the preliminary injunction, would moot the case, good lawyers surely had to prepare for other alternatives.

■ To reflect these concerns, I have divided the fee application into three periods. First the period of preparation *prior* to the granting of the preliminary injunction; second, the period after the preliminary injunction through the completion of the renovation; and third, the period from the completion of the renovation to the filing of the attorneys' fees application. The first period was the period of maximum work—evaluating the legal issues, preparing the pleadings, etc. While the defendants were largely unresponsive, the plaintiffs could not have known how much work they needed to do or the direction that the litigation would have gone. I will grant that portion of the application in its entirety, amounting to $40,147.00.

■ The second was a period when the work continued on the building—the very relief that was being sought in the litigation—while the litigation stalled. Since

the renovation work was going on under the authority of the preliminary injunction, the handwriting was on the wall. While it was appropriate to continue some work—just in case—that work had to be within reason. I will only count half of the fees of Mr. Hunt who was ostensibly conducting the ongoing settlement discussions ($4,690).

Finally, the third period was the period after the renovations were completed until the application for attorneys fees. While the preparation of the application should be compensated, the time expended in this period beyond the time necessary for the application was excessive. I will only allow attorneys' fees in connection with the preparation of the petition or $4,157. The total fee award is $48,994.00.

### 3. *Costs*

Plaintiffs incurred litigation costs of $350.00 for the filing of the complaint, $506.00 to serve process upon the defendants, $149.00 to serve a subpoena, and $30.00 for a taxi, apparently to attend a status conference at the courthouse. Exhibit A, Pls.' Mem. in Supp. of Mot. for Attorney Fees at 16, 22–23 (document # 42–2). I award these costs in full, with the exception of the taxi fare, for a total of $1,005.00.

## V. *CONCLUSION*

Plaintiffs' Motion for Attorneys' Fees and Costs (document # 42) is **GRANTED IN PART** and **DENIED IN PART.** As explained above, plaintiffs are prevailing parties under the fee-shifting provision of the FHAA, 42 U.S.C. § 3613(c)(2). I hereby award the sum of $48,994.00 in reasonable attorney fees and $1,005.00 in costs, for a total of **FORTY–NINE THOUSAND, NINE HUNDRED NINETY–** NINE AND 00/100 ($49,999.00) DOLLARS.

**SO ORDERED.**