**A.P., by next friend, Steven Pursley, et al., Plaintiffs,**

v.

**BOARD OF EDUCATION FOR CITY OF TULLAHOMA, TENNESSEE, et al., Defendants.**

Case No. 4:14–cv–65

United States District Court, E.D. Tennessee, Winchester Division.

Signed September 21, 2015

---

Iska Hoole, Legal Aid Society of Middle TN and The Cumberlands, Tullahoma, TN, Norman B. Feaster, II, Legal Aid Society of Middle TN and The Cumberlands, Cookeville, TN, Lenny L. Croce, Legal Aid Society of Middle Tennessee and The Cumberlands, Oak Ridge, TN, for Plaintiffs.

John D. Kitch, Cornelius & Collins, LLP, Michael K Markham, Office of The Attorney General, Nashville, TN, for Defendants.

### ORDER

HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiffs' Motions for Attorney Fees (Docs.36, 37) and Defendant Board of Education for Tullahoma City Schools' Motion to Dismiss Request for Attorney Fees (Doc. 42). Plaintiffs move for attorney's fees pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B).[1] (Docs.36, 37). This Court entered judg-

---

**1.** Plaintiffs also seek fees pursuant to 42 U.S.C. § 1988, presumably on the basis that they prevailed on the claim brought under 42 U.S.C. § 1983 for a declaratory injunction that the Defendants violated Plaintiffs' procedural rights in violation of 42 U.S.C. § 1983.

(See Doc. 1 at 10). The Court's October 10, 2014 decision, however, was based entirely on the Plaintiff's IDEA claim and did not address the Section 1983 claim at all. Therefore, the Court concludes that Plaintiffs were not prevailing parties for purposes of Section

ment in favor of Plaintiffs on the sole issue raised in this action: whether Plaintiff A.P. was entitled to a "stay put" order keeping him in his then-current education placement pending resolution of the underlying due process hearing requested by his father, Steven Pursley. (Doc. 34) For the reasons stated herein, the Court finds that Plaintiffs are "prevailing parties" pursuant to IDEA's attorney's fees provision, 20 U.S.C. § 1415(i)(3)(B), and are thus entitled to attorney's fees incurred in obtaining relief under the stay put provision. Accordingly, Plaintiffs' Motions (Docs.36, 37) will be **GRANTED,** Defendant Board of Education for Tullahoma City Schools' Motion (Doc. 42) will be **DENIED,** and Plaintiffs will be awarded fees in the amount of **$23,582.00** from Defendants in this action.

## I. FACTS

Most of the facts relevant to this motion are recited in the Court's October 10, 2014 Order granting Plaintiffs the stay put order allowing A.P. to remain in his then-current educational placement:

A.P. and his parent, Steven Pursley, filed their Complaint seeking injunctive and declaratory relief regarding the denial of procedural safeguards guaranteed by the Individuals with Disabilities Education Act ("IDEA"). (Doc. 1). The Court will summarize the facts relevant to the narrow determination currently before it.

In September 2011, a TCS [Tullahoma City Schools] individualized education program (IEP) team determined that A.P. had a disability that adversely affected his educational performance at his educational placement, East Middle School. (Doc. 1–1). The IEP team identified A.P.'s disabilities as "other health impairment" and "specific learning disability." (*Id.*).

A.P. began the 2013–2014 school year at the Behavior Adjustment Class ("BAC"), which is separate from the school district's middle school. (Doc. 1 at 5). On April 28, 2014, the IEP team met and decided that although A.P. has a disability, it did not adversely affect his educational performance. (Doc. 1–15). Steven Pursley and his attorney were present at this meeting and disagreed with the determination. On May 9, 2014, A.P. brought home a notice dated May 6, 2014, which stated that TCS planned to change A.P.'s placement back to high school as a regular education student. (Doc. 1–16). On May 16, 2014, Steven Pursley filed a request for a due process hearing in which he invoked A.P.'s stay-put rights. (Doc. 1–17). A.P. finished the remainder of the year at the BAC. (Doc. 1 at 7). At the beginning of the 2014–2015 school year, when Steven Pursley attempted to enroll A.P. at the BAC, TCS informed him that A.P. needed to be enrolled at the high school as a regular education student. (*Id.*).

On July 31, 2014, the Administrative Law Judge ("ALJ") presiding over A.P.'s case refused to issue a stay-put order because he determined that Steven Pursley was not timely in requesting a hearing. The ALJ based this ruling on the fact that Steven Pursley had "actual notice" of the change in placement because he was present at the eligibility determination on April 28, 2014. (Doc. 1–19 at 3). On September 4, 2014, Pursley moved for reconsideration, but his request was denied.

(Doc. 34 at 1–2). The sole issue before the Court was whether Plaintiffs had timely requested the due process hearing and were therefore entitled to a stay put order keeping A.P. in special education classes pending the due process hearing and a

---

1988 and will not address a request for attor-    ney's fees under that particular statute.

determination by the state Administrative Law Judge ("ALJ") of his proper permanent placement. While Plaintiffs characterized their request for relief in the form of the stay-put order as a preliminary injunction, the Court found Plaintiffs were requesting a permanent injunction "given the narrow determination before the Court." (*Id.* at 5). The Court granted Plaintiffs' motion for injunctive relief concluding, based on the construction of two Tennessee regulations, that Plaintiffs had timely requested a due process hearing under the IDEA and therefore were entitled to a stay put order. (*Id.* at 4–8). The Court then entered judgment remanding the action to the ALJ for a determination on the merits of A.P.'s due process proceedings. (Doc. 35).

Plaintiffs subsequently moved for attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) and 42 U.S.C. § 1988 in the amount of $23,582.00. (Doc. 37). While this motion was pending, Plaintiffs' due process proceedings continued at the state administrative level where the ALJ determined on April 10, 2015, that A.P., while disabled, "no longer requires special education services in order to access his education." (*See* Doc 42–1 at 2).

## II. ANALYSIS

### A. Prevailing Party Status

■ In the United States, under "the American Rule," parties are required generally to bear their own attorney's fees regardless of the outcome of a claim absent a fee shifting statute. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *McQueary v. Conway*, 614 F.3d 591, 596–97 (6th Cir.2010). Congress has passed numerous fee shifting statutes permitting an award of attorney's fees to a "prevailing party," and the Supreme Court has interpreted these stat-

utes consistently with one another. *Buckhannon*, 532 U.S. at 602–03, 603 n. 4, 121 S.Ct. 1835 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

Section 1415(i)(3)(B) of the IDEA provides that the court may, in its discretion, award attorney's fees in any action brought under the IDEA "to a prevailing party who is the parent of a child with a disability." Plaintiffs assert they are the prevailing party in this action because they obtained complete relief on the only claim they brought before this Court: whether they were entitled to a stay put order requiring that A.P. remain in special education classes pending the resolution of due process proceedings to determine his permanent placement. Defendants assert Plaintiffs are not prevailing parties because they obtained only interim relief which was not based on the merits of A.P.'s case. Rather, the argument continues, Plaintiffs cannot be prevailing parties because the state ALJ actually determined after a due process hearing that A.P. was not entitled to special education classes. While there is no binding precedent directly on point regarding the award of attorney's fees as a prevailing party for obtaining a stay put order, both sides cite persuasive authority in their favor. Before addressing these cases, however, the Court will discuss some leading United States Supreme Court cases on "prevailing party" status.

#### 1. Supreme Court Precedent

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) considered whether a party who has failed to secure a judgment on the merits or a court ordered consent decree is nonetheless entitled to attorney's fees as a prevailing party because the opposing party voluntarily changed its conduct as a result of the

lawsuit. The Supreme Court held it did not. *Id.* at 600, 121 S.Ct. 1835. In *Buckhannon*, the state of West Virginia (State) issued a cease and desist order requiring closure of a residential facility because some of the residents were not capable of moving themselves in the event of imminent danger, a violation of state law. The owners of the facility filed suit asserting the state law requiring "self-preservation" violated the Fair Housing Amendments of 1988 ("FHA"). While the action was pending, the West Virginia legislature amended state law repealing the self-preservation requirement. Accordingly, the district court dismissed the pending action as moot. The residential facility, however, sought attorney's fees under the FHA's fee shifting provision as a "prevailing party" on the ground that its lawsuit was the catalyst for the legislature's repeal of the self-preservation requirement. The Supreme Court rejected the catalyst theory for attorney's fees holding that in order to be a "prevailing party," that party must have received at least some relief on the merits of his claim and a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 603–05, 121 S.Ct. 1835.

In *Sole v. Wyner*, 551 U.S. 74, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007), the Supreme Court considered whether a party was a prevailing party under 42 U.S.C. § 1988 by obtaining a preliminary injunction where the party ultimately was denied a permanent injunction in an action brought under 42 U.S.C. § 1983. In *Sole*, the plaintiff wanted to create an artistic peace symbol with nude persons on a Florida beach in violation of Florida's state bathing suit law. Plaintiff obtained a preliminary injunction from the district court to permit the nude demonstration provided plaintiff placed a screen around the demonstration in order to protect those who did not want to see nudity on public beaches. After the demonstration was held and it became clear that participants in the demonstration refused to stay behind the screen, the district court concluded the screen was not sufficient to shield nudity from the public who did not want to see it and denied a permanent injunction which would have permitted future nude demonstrations on state beaches. *Id.* at 80–81, 127 S.Ct. 2188. The Court noted that "[a]t the preliminary injunction stage, the court is called upon to assess the probability of the plaintiff's ultimate success on the merits." *Id.* at 84, 127 S.Ct. 2188. In denying plaintiff attorney's fees for securing the preliminary injunction, the Supreme Court reasoned, "[o]f controlling importance to our decision, the eventual ruling on the merits for defendants, after both sides considered the case for final adjudication, superseded the preliminary ruling. [Plaintiff's] temporary success rested on a premise the District Court ultimately rejected," *id.* at 84–85, 127 S.Ct. 2188, and "[t]he final decision in [plaintiff's] case rejected the same claim she advanced in her preliminary injunction motion." *Id.* at 86, 127 S.Ct. 2188.

### 2. IDEA Case Law

Before discussing the authority cited by the parties, it is important to understand the nature of a "stay put" order under the IDEA. The language of the stay-put provision "is unequivocal." *Honig v. Doe*, 484 U.S. 305, 323, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The so-called "stay put" provision of the IDEA states that "the child shall remain in the then-current educational placement" pending a due process proceeding to determine the appropriate permanent placement of the child unless the parents and the local educational agency agree otherwise. 20 U.S.C. § 1415(j) (emphasis added).[2] Furthermore,

**2.** 20 U.S.C. § 1415(j) provides:

Maintenance of Current Educational Place-

[t]he 'stay-put' provision is premised on the rationale that preservation of the status quo, rather than an inappropriate reaction to an emergent situation, provides for the best interests of a child. The 'stay put' provision insures that a school cannot eject a child and change his placement without complying with due process requirements.

*Tennessee Dept. of Mental Health and Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996).

Defendants rely heavily on three cases to support their argument that Plaintiff is not the prevailing party and is thus not entitled to attorney fees. First, in *Edwards v. Cleveland Heights–University Heights Bd. of Educ.*, 1991 WL 270811 (6th Cir. Dec. 19, 1991) (unpublished), the United States Court of Appeals for the Sixth Circuit addressed the issue of whether a child who had not yet been determined to be disabled under the IDEA was entitled to attorney's fees as a prevailing party for obtaining a stay put order from the district court. In *Edwards,* the child was expelled for behavioral issues. While the action was pending in the district court, the school board agreed to a stay put order allowing the child to remain in school and to test the child for a disability. The district court entered an order reflecting the stay put agreement. While the issue of the child's disability was pending in the state administrative proceeding, the parents asked the district court for attorney's fees on the ground that they had prevailed in a discrete stage of the suit because they had obtained a stay put order. *Id.* at *4. The district court denied the motion for fees and the Sixth Circuit affirmed on the

ground that "the question whether [the child] has a learning disability had not yet been reached in the administrative proceedings" and the fee shifting statute, by its express language, applies only to parents or a guardian of a child with a disability. *Id.* at *5. The Sixth Circuit also flatly stated, "[m]oreover, plaintiffs were not prevailing parties," providing no analysis as to why it so concluded. *Id.* Plaintiffs in this case argue *Edwards* is distinguishable from the instant case because the district court's stay put order in *Edwards* was simply a reflection of the parties' agreement, whereas in this case the stay put provision was heavily litigated, and the resulting order (Doc. 34) changed the rights and actions of the parties. Furthermore, unlike in *Edwards,* it is undisputed that the child at issue in this case is disabled under the IDEA.

Second, in *Bd. of Educ. of Oak Park v. Nathan R.,* the United States Court of Appeals for the Seventh Circuit held that obtainment of a stay put order did not make parents prevailing parties under IDEA as the stay put order was non-merit based, interim relief that did not materially alter the legal relationship between the parties. 199 F.3d 377, 381–82 (7th Cir. 2000). Plaintiffs argue that this case is distinguishable because the plaintiff in *Nathan R.* was granted a stay put order by a hearing officer. In this case, however, the ALJ *denied* Plaintiff's request for a stay put order, thus forcing Plaintiffs to turn to this Court for relief.

Finally, in *J.O. v. Orange Twp. Bd. of Educ.,* 287 F.3d 267 (3rd Cir.2002), another case cited by Defendants, the school board repeatedly suspended a student with a dis-

ment.—Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current education-

al placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

ability. While a due process proceeding was pending on the state administrative level to determine if the student's conduct for which he was suspended was a manifestation of his disability, the parent sought what was in effect a stay put order for the child to remain in his current school placement. The ALJ granted the request and the parent subsequently filed suit in district court seeking attorney's fees under the IDEA as the prevailing party in the administrative proceeding. *Id.* at 270–71. The district court denied attorney's fees and the Third Circuit affirmed, finding a stay put order is only "interim relief," a type of "automatic preliminary injunction," "designed to maintain the status quo during the course of the proceedings" and as such, its award is not on the merits of plaintiff's claims. *Id.* at 272–74. Furthermore, the court noted that

> the fact that there could have been future proceedings does not necessarily make attorney's fees unavailable for this stage of the proceeding. In *Bagby v. Beal* . we affirmed an award of attorney's fees where the plaintiff succeeded on her due process claim for a hearing, even though she ultimately lost at that hearing, because the interim relief obtained (the hearing) remedied the violation.

*Id.* at 273 (citations omitted). Similarly to its argument distinguishing Nathan R, Plaintiffs argue that the ALJ's denial of the stay put request forced Plaintiffs to litigate the issue before this Court. This Court's ultimate order (Doc. 34), the Plaintiffs argue, remedied the violation like in *Bagby* by enforcing the stay put provision. (Doc. 39 at 5).

Several other cases not cited by the parties shed further light on the complexity of this issue. In *Y.B. v. Williamson Cnty. Bd. of Educ.*, 2009 WL 4061311 (M.D.Tenn. Nov. 20, 2009), for example, the school board suspended a student with

a disability for one year after he brought vodka to school, drank it, and became ill. *Id.* at *1. Over the course of a year, the student's parents and the school board engaged in administrative proceedings to determine if the student's behavior was a manifestation of his disability. While the administrative proceedings continued on the manifestation issue, the parties agreed at a resolution session that the student be allowed to return to his original high school placement and engage in normal extra-curricular activities, that the parents be reimbursed for transportation costs incurred for the ten days they drove their student to a different placement, that the student have . a re-evaluation meeting in the Fall, and that the student's ten days of suspension constitute the full suspension. *Id.* at *2. Subsequently, the administrative judge entered a final order finding, *inter alia,* that while the student's conduct was not a manifestation of his disability, the parties' previous agreement would nevertheless constitute the final order in the proceeding. *Id.* at *3. The parents then filed an action in federal district court seeking attorney's fees under 20 U.S.C. § 1415(i)(3)(B) on the ground that they were prevailing parties since they had obtained a favorable order from the administrative judge. The district court first discussed the standard applicable to determine whether a party is prevailing for purposes of attorney's fees:

> "[S]uccess alone, however, is not enough" to be entitled to attorneys' fees as a "prevailing party." *Tompkins v. Troy Sch. Dist.*, 199 Fed.Appx. 463, 466 (6th Cir.2006). That is, the "term prevailing party also requires that there be 'a *court-ordered* change in the legal relationship between the plaintiff and the defendant.'" *Id.* (quoting *Buckhannon,* 532 U.S. at 604 [121 S.Ct. 1835]) (emphasis in *Tompkins*). Indeed, the change in legal relationship requires a "judicial im-

primatur" before "prevailing party" status can be granted. *Buckhannon,* 532 U.S. at 605 [121 S.Ct. 1835]. Both a judgment on the merits and a settlement agreement enforced through a consent decree qualify as such "court-ordered" changes in the legal relationship. *Id.* at 604–05 [121 S.Ct. 1835]. Therefore, for Y.B. "to be eligible for an award of attorneys' fees as [a prevailing party] under the IDEA, [he] must have (1) succeeded on a significant issue, and (2) this success must be embodied in either a judgment on the merits or in a settlement agreement enforced through a consent decree." *Tompkins,* 199 Fed.Appx. at 466.

*Y.B.,* 2009 WL 4061311, at *5. The district court then applied this standard to the particular facts of its case:

> To be clear, there is no dispute that the final conclusion of the AJ [administrative judge] was that the incident was not a manifestation of the impairment and that the plaintiff did not prevail on this issue. That said, as indicated above, prevailing party status is determined by taking a broad view of the entire litigation and examining whether the plaintiff, considering his goals at the outset, prevailed on "any significant issue" in the litigation. Here, while the plaintiff may not have prevailed on the foundational issue of manifestation and may have obtained much of the relief in this case through settlement negotiations, he clearly used litigation to produce a favorable result on many substantive issues, and that favorable result is embodied in the AJ's Final Order.

*Id.* at *6. Accordingly, the plaintiffs were awarded attorney's fees, but that award was based on the entry of the final order on all of Plaintiff's claims, not simply the stay put order.

In *Douglas v. District of Columbia,* 67 F.Supp.3d 36 (D.D.C.2014), the plaintiff, an eighteen year old student with a disability, brought an action in district court under 20 U.S.C. § 1415(j) seeking a stay put order to permit him to remain in his current high school placement after the school district's staff unilaterally decided that placement was no longer appropriate for him. This action was filed during the pendency of an administrative proceeding regarding plaintiff's ultimate placement. *Id.* at 39. The court explicitly rejected the Third Circuit's decisions denying prevailing party status for parents or guardians who obtain stay put orders stating, "[t]hese cases are inapplicable because the Third Circuit applies restrictions above and beyond *Buckhannon,* barring the recovery of attorney's fees for any 'interim' relief that does not 'resolve any merits-based issue in [the plaintiff's] favor.' " *Id.* at 41 (brackets original) (quoting *John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit,* 318 F.3d 545, 559 (3rd Cir.2003)). Rather, the correct standard for prevailing party status, the Douglas court held, is whether the party succeeded on a significant issue raised in the litigation, and secured some judicially sanctioned benefit which resulted in a change in the parties' legal relationship. *Id.* at 40 (relying on *Buckhannon,* 532 U.S. at 604–05, 121 S.Ct. 1835). The Douglas court concluded that, having obtained the stay put order, the plaintiff was the prevailing party entitled to fees under the IDEA. *Id.* at 41–42. As a secondary observation, the court noted the merits of that particular action had, indeed, been decided since the complaint asked for a stay put order and the plaintiff had obtained a stay put order. *Id.* at 42.

The court in *Hawaii Dep't of Educ. v. C.B.,* took an approach similar to that of the *Douglas* court, finding that parents who successfully obtained a stay put order from the district court were entitled to attorney's fees as prevailing parties because the stay put order materially altered

the relationship between the parties. 2013 WL 704934, *3–*6 (D.Hawaii Feb. 26, 2013). Plaintiff and his parents challenged the adequacy of plaintiff's Individualized Education Plan ("IEP") under the IDEA. A state administrative judge found for the plaintiff and against the Department of Education ("DOE") on this issue, but the district court reversed, finding no violation of the IDEA based on plaintiff's IEP. *Id.* at *2. The court, however, found the plaintiff and his parents were entitled to a stay put order requiring the DOE to reimburse the parents for the costs of plaintiff's placement in a private school, his then current placement. Furthermore, the court rejected the DOE's argument that plaintiff was not entitled to such a stay put order because plaintiff did not "prevail on the merits of a dispute." *Id.* at *4. Instead, the court noted that "the DOE vigorously contended that the 'stay put' provision did not apply at all and declined to pay any 'stay put' benefits," thus when the court ordered those benefits, plaintiff and his parents became prevailing parties. *Id.* at *5. The *C.B.* court also distinguished its case from the Third Circuit opinions by stating that its order requiring payment of tuition was "akin to a money judgment … more readily characterized as an 'enforceable judgment' materially altering the parties' relationship." *Id.* at *6.

### 3. Application

■ As this discussion has shown, there have been several approaches to requests for attorney's fees for obtaining a stay put order. One approach is to hold flatly that fees cannot be awarded for a obtaining a stay put order if the moving party does not receive a subsequent administrative or court order permitting the same placement as required by the stay put order. The rationale for this approach is that if the plaintiff does not prevail on his claim for permanent placement, then he has achieved no success on the merits of his claim by obtaining the stay put order. An-

other approach is to focus on the fact that monetary relief, as opposed to purely injunctive relief, was given.

The Court respectfully disagrees with both of these approaches, as they misapprehend what constitutes "the merits" in litigation waged to obtain a stay put order. Unlike in *Sole*, where "the court is called upon to assess the probability of the plaintiff's ultimate success on the merits" before granting a preliminary injunction, 551 U.S. at 84, 127 S.Ct. 2188, the merits of whether the moving party is entitled to a stay put order are entirely separate from the merits of a decision about a disabled child's permanent placement. The court is not called upon to evaluate the potential success of the child and/or his parents in obtaining the requested final placement— it has no bearing whatsoever on whether the child is entitled to a stay put order. The stay put order is important relief expressly provided by the IDEA to which a disabled child is entitled independent of considerations surrounding the child's permanent placement. As is often the true when evaluating a motion for attorney's fees under a fee shifting provision, there may be more than one claim to consider. In this case, the claim for the stay put order and the claim for permanent placement are two separate claims and should be evaluated independently for purposes of determining who is the prevailing party under the fee shifting provision of the IDEA.

■ With this understanding of the merits of a claim for a stay put order, the Court returns to *Buckhannon* to craft an appropriate test to determine when a party is a prevailing party for purposes of IDEA's fee shifting provision. First, in order to be the "prevailing party," a party must have received at least some relief on the merits of his claim. This relief must concern "any significant issue in litigation

which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Second, there must be a judicially sanctioned change in the legal relationship of the parties. Such relief must "materially alter[ ] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The Court will address these factors in turn.

With regard to the first factor, Plaintiffs unequivocally obtained relief on the merits of their claim that A.P. was entitled to a stay put order. The sole issue before this Court was whether Plaintiff had timely requested a due process hearing thereby entitling him to a stay put order. After a review of the state regulations in question, this Court found for Plaintiff and ordered injunctive relief requiring entry of the stay put order. (Doc. 34). Defendants argue that this was not a "decision on the merits but only on a procedural issue." (Doc. 43 at 3). Presumably the "merits" to which Defendant refers are the merits of Plaintiffs' claim that A.P. remained eligible for special education services under IDEA. This interpretation of what constitutes "the merits" of the claim at-issue, however, ignores reality. As indicated in both parties' briefs and in the Court's October 10, 2014 Order (Doc. 34), the sole issue before this Court was whether Plaintiffs were entitled to a stay put order. On this issue, the Court explicitly held that "Plaintiffs have established that they are successful on the merits of their challenge to the ALJ's ruling [that Plaintiff was not entitled to a stay put order]." (Doc. 34 at 9). Because Plaintiffs' sole objective in filing a lawsuit in this Court was to obtain a stay put order, the Court finds that Plaintiffs obtained not just some relief as to "any significant issue" but *complete* relief as to *all issues* Plaintiff sought in bringing suit in this Court.

Turning to the second factor, the Court finds that Plaintiff obtained his success on the merits of his claim through court ordered relief. Importantly, this is not a situation where the Court or the ALJ perfunctorily entered an unopposed stay put order at the request of one or both parties. Defendants vigorously opposed the stay put order litigating it at both the administrative and district court levels. Plaintiffs were forced to file an action in this Court, which entered an order for injunctive relief and a final judgment for Plaintiff that materially altered the legal relationship of the parties (i.e. the Defendant had to allow A.P. to remain in his then-current educational placement pending resolution of the administrative due process hearing). Because the Parties' legal relationship was changed by this Court's October 10, 2014 Order (Doc. 34), Plaintiffs have satisfied the judicially-sanctioned-relief element of the test for qualifying as a prevailing party.

Furthermore, this situation is not akin to the preliminary injunction at issue in *Sole v. Wyner.* Therein, the Supreme Court held that the "[p]revailing party status ... does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." 551 U.S. at 83, 127 S.Ct. 2188. The ultimate decision on the merits of a special education due process hearing, by definition, cannot dissolve a stay put order because a student's right to remain in his then-current educational placement under 20 U.S.C. § 1415(j) is separate and independent of the merits of the underlying due process hearing. The stay put order was not ultimately dissolved for lack of entitlement, but rather it was dissolved because it served its purpose in assuring that A.P. remained in his then-current educational placement until the ad-

ministrative due process hearing was complete.

Finally, the Court notes that its decision promotes the policy behind IDEA's stay put and fee shifting provisions. As articulated in *Tennessee Dept. of Mental Health and Mental Retardation v. Paul B.*,

> [t]he 'stay-put' provision is premised on the rationale that preservation of the status quo, rather than an inappropriate reaction to an emergent situation, provides for the best interests of a child. The 'stay put' provision insures that a school cannot eject a child and change his placement without complying with due process requirements.

88 F.3d at 1472. One of these due process requirements is the right to appeal an ALJ's denial of relief under the stay put provision, 20 U.S.C. § 1415(j), to this Court. *See* 20 U.S.C. § 1415(i)(2)(A). The purpose of the fee shifting provision is both to entice attorneys to represent parents and students in special education matters, and to enable parents to obtain counsel without having to worry about the associated financial pressures. If a plaintiff is only permitted to collect attorney fees for successfully appealing an ALJ's denial of a stay put order if the plaintiff ultimately succeeds on the merits of the underlying administrative proceeding, it will deter appeals to the district courts of administrative denials of stay put orders.[3] Such a disincentive is not in the best interests of the child, as it will necessarily result in fewer appeals of denials of stay put orders, and fewer students remaining in their then-current educational placement pending resolution of the underlying

administrative due process hearing, as demanded by 20 U.S.C. § 1415(j).

Accordingly, the Court finds that Plaintiffs are the prevailing party in this action to obtain a stay put order for purposes of the IDEA's fee shifting statute, 20 U.S.C. § 1415(i)(3)(B).

### B. Calculation of Attorney's Fees

■ The Court finds that a lodestar analysis is the appropriate means for determining the fees reasonably incurred. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *see also Adcock–Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir.2000).

Pursuant to the lodestar method, the Court considers, first, the reasonableness of the hourly rates charged by counsel. The Court finds that the hourly rates charged by Plaintiffs' counsel, (*see* Doc. 36–1 at 4; Doc. 36–2 at 4; and Doc. 36–3 at 5), are reasonable and are consistent with rates generally charged by practitioners in this region with experience equivalent to that of Plaintiffs' counsel.[4]

As the second component of the lodestar analysis, the Court considers the reasonableness of the hours expended in the litigation. Plaintiffs' counsel represent that 80.8 hours of attorney time was expended in securing a stay put order for Plaintiffs. (*See id.*). Plaintiffs' counsel further represent that they have only charged fees for services rendered between September 4, 2014 and October 9, 2014,[5] and that travel

---

**3.** Attorneys will not want to risk not being paid for an appeal to the district court, and parents will not want to risk running up a higher bill for legal fees in the event that they are not the prevailing party in the underlying administrative proceeding.

**4.** Defendants do not challenge the reasonableness of Plaintiffs' attorneys' claimed hourly rates. (*See* Doc. 38 at 4).

**5.** These dates represent the day on which the Administrative Law Judge denied Plaintiffs' motion to reconsider denial of a stay put order, and the date on which this Court held

time has been reduced by approximately 50%. (*Id.*). Defendants argue that "[i]t should not have taken three attorneys 80.8 hours ... to deal with this relatively simple issue," and that it was "unwarranted and excessive" to discuss and prepare a complaint detailing the alleged flaws in Defendants' school system (i.e. discussing the merits of the underlying administrative due process hearing). (Doc. 38 at 4).

 Notwithstanding Defendants' arguments to the contrary, the Court finds that the hours expended are reasonable. First, the Court notes that it is not uncommon for multiple attorneys within a single organization to collaborate on a case. Second, the Court has reviewed Plaintiffs' Complaint (Doc. 1) and agrees with Plaintiffs that the level of detail alleged was necessary to provide context for the Court to address Plaintiffs' request for a stay put order. Furthermore, it is far from clear that the stay put issue was "relatively simple," as two judicial authorities, the ALJ and this Court, disagreed on the proper outcome under Tenn. Comp. R. & Regs. 0520–01–09–.16 and 0520–01–09–.13, (*see* Doc. 34 at 8), and Defendants vigorously argued against entering a stay put order at both stages. This, coupled with Plaintiffs' self-imposed restrictions on billable hours discussed above leads the Court to find that the number of hours expended are reasonable and consistent with the amount of time needed to secure a stay put order.

Accordingly, Plaintiffs will be awarded $23,582.00 in fees from Defendants in this action.

## III.  CONCLUSION

For the reasons stated herein, the Court finds that Plaintiffs are the prevailing party in this action seeking a stay put order. Having found that Plaintiffs' attorneys

a hearing on the stay put matter, respectively.

have billed reasonable hours at reasonable hourly rates, the Plaintiffs' Motions for Attorney Fees (Docs.36, 37) are hereby **GRANTED** and Defendants' Motion to Dismiss Request for Attorney Fees (Doc. 42) is hereby **DENIED**. Plaintiffs are hereby awarded $23,582.00 in fees from Defendants in this action.

A separate judgment will enter.

**SO ORDERED** this 21st day of September, 2015.